James E. SWANN et al., Plaintiffs,

v.

CHARLOTTE–MECKLENBURG BOARD OF EDUCATION, a public body corporate, William E. Poe, Henderson Belk, Dan Hood, Ben F. Huntley, Betsey Kelly, Coleman W. Kerry, Jr., Julia Maulden, Sam McNinch, III, Carlton G. Watkins, the North Carolina State Board of Education, a public body corporate, and Dr. A. Craig Phillips, Superintendent of Public Instruction of the State of North Carolina, Defendants,

Honorable Robert W. Scott, Governor of the State of North Carolina, Honorable A. C. Davis, Controller of the State Department of Public Instruction, Honorable William K. McLean, Judge of the Superior Court of Mecklenburg County, Tom B. Harris, G. Don Roberson, A. Breece Breland, James M. Postell, William E. Rorie, Jr., Chalmers R. Carr, Robert T. Wilson, and the Concerned Parents Association, an unincorporated association in Mecklenburg County, James Carson and William H. Booe, Additional Parties-Defendant.

Mrs. Robert Lee MOORE et al.,
Plaintiffs,

v.

CHARLOTTE–MECKLENBURG BOARD OF EDUCATION and William C. Self, Superintendent of Charlotte-Mecklenburg Public Schools, Defendants.

Civ. Nos. 1974, 2631.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Heard March 24, 1970.

Decided April 28, 1970.

J. LeVonne Chambers, Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., and James M. Nabrit, III, New York City, for plaintiffs James E. Swann and others.

William J. Waggoner, Weinstein, Waggoner, Sturges, Odom & Bigger and Benjamin Horack, Charlotte, N. C., for defendants Charlotte-Mecklenburg Bd. of Ed. and others.

Ralph Moody, Deputy Atty. Gen., and Andrew A. Vanore, Jr., Asst. Atty. Gen., for State defendants and additional parties-defendant.

William H. Booe and Whiteford S. Blakeney, Charlotte, N. C., for other additional parties-defendant and plaintiffs Mrs. Robert Lee Moore and others.

Before CRAVEN and BUTZNER, Circuit Judges, and McMILLAN, District Judge.

CRAVEN, Circuit Judge:

This three-judge district court was convened pursuant to 28 U.S.C. § 2281 et seq. (1964), to consider a single aspect of the above-captioned case: the constitutionality and impact of a state statute, N.C.Gen.Stat. § 115–176.1 (Supp.1969), known as the antibussing law, on this suit brought to desegregate the Charlotte-Mecklenburg school system. We hold a portion of N.C.Gen.Stat. § 115–176.1 unconstitutional because it may interfere with the school board's performance of its affirmative constitutional duty under the equal protection clause of the Fourteenth Amendment.

## I.

On February 5, 1970, 311 F.Supp. 265, the district court entered an order requiring the Charlotte-Mecklenburg School Board to desegregate its school system according to a court-approved plan. Implementation of the plan could require that 13,300 additional children be bussed.[1] This, in turn, could require up to 138 additional school buses.[2]

Prior to the February 5 order, certain parties filed a suit, entitled Tom B. Harris, G. Don Roberson, et al. v. William C. Self, Superintendent of Charlotte-Mecklenburg Schools and Charlotte-Mecklenburg Board of Education, in the Superior Court of Mecklenburg County, a court of general jurisdiction of the State of North Carolina. Part of the relief sought was an order enjoining the expenditure of public funds to purchase, rent or operate any motor vehicle for the purpose of transporting students pursuant to a desegregation plan. A temporary restraining order granting this relief was entered by the state court, and, in response, the *Swann* plaintiffs moved the district court to add the state plaintiffs as additional parties defendant in the federal suit, to dissolve the state restraining order, and to direct all parties to cease interfering with the federal court mandates. Because it appeared that the constitutionality of N.C.Gen. Stat. § 115–176.1 (Supp.1969) would be in question, the district court requested designation of this three-judge court on February 19, 1970. On February 25, 1970, the district judge granted the motion to add additional parties. Meanwhile, on February 22, 1970, another state suit, styled Mrs. Robert Lee Moore, et al. v. Charlotte-Mecklenburg Board of Education and William C. Self, Superintendent of Charlotte-Mecklenburg Schools, was begun. In this second state suit, the plaintiffs also requested an order enjoining the school board and superintendent from implementing the plan ordered by the district court on February 5. The state court judge issued a temporary restraining order embodying the relief requested, and on February 26, 1970, the *Swann* plaintiffs moved to add Mrs. Moore, *et al.*, as additional parties defendant in the federal suit. On the same day, the state defendants filed a petition for removal of the *Moore* suit to federal court. On March 23, 1970, the district judge requested a three-judge court in the removed *Moore* case, and this panel was designated to hear the matter. All the cases were consolidated for hearing, and the court heard argument by all parties on March 24, 1970.

## II.

N.C.Gen.Stat. § 115–176.1 (Supp.1969) reads:

Assignment of pupils based on race, creed, color or national origin prohibited.—No person shall be refused admission into or be excluded from any public school in this State on account of race, creed, color or national origin. No school attendance district or zone shall be drawn for the purpose of segregating persons of various races, creeds, colors or national origins from the community.

Where administrative units have divided the geographic area into attendance districts or zones, pupils shall be assigned to schools within such attendance districts; provided, however, that the board of education of an administrative unit may assign any pupil to a school outside of such attendance district or zone in order that such pupil may attend a school of a specialized kind including but not limited to a vocational school or school

---

1. On March 5, 1970, the Fourth Circuit Court of Appeals stayed that portion of the district court's order requiring bussing of students pending appeal to the higher court.

2. There is a dispute between the parties as to the additional number of children who will be bussed and as to the number of additional buses that will be needed. For our purposes, it is immaterial whose figures are correct. The figures quoted are taken from the district judge's supplemental findings of fact, filed March 21, 1970.

operated for, or operating programs for, pupils mentally or physically handicapped, or for any other reason which the board of education in its sole discretion deems sufficient. No student shall be assigned or compelled to attend any school on account of race, creed, color or national origin, or for the purpose of creating a balance or ratio of race, religion or national origins. Involuntary bussing of students in contravention of this article is prohibited, and public funds shall not be used for any such bussing.

The provisions of this article shall not apply to a temporary assignment due to the unsuitability of a school for its intended purpose nor to any assignment or transfer necessitated by overcrowded conditions or other circumstances which, in the sole discretion of the school board, require assignment or reassignment.

The provisions of this article shall not apply to an application for the assignment or reassignment by the parent, guardian or person standing in loco parentis of any pupil or to any assignment made pursuant to a choice made by any pupil who is eligible to make such choice pursuant to the provisions of a freedom of choice plan voluntarily adopted by the board of education of an administrative unit.

It is urged upon us that the statute is far from clear and may reasonably be interpreted several different ways.

(A) Plaintiffs read the statute to mean that the school board is prevented from complying with its duty under the Fourteenth Amendment to establish a unitary school system. See, e. g., Green v. County School Bd. of New Kent County, 391 U.S. 430, 439, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). In support of this contention, plaintiffs argue that the North Carolina General Assembly passed § 115–176.1 in response to an April 23, 1969, district court order, which required the school board to submit a plan to desegregate the Charlotte schools for the 1969–70 school year. Under plaintiffs' interpretation, the

board is denied all desegregation tools except nongerrymandered geographic zoning and freedom of choice. Implicit in this, of course, is the suggestion that zoning and freedom of choice will be ineffective in the Charlotte context to disestablish the asserted duality of the present system.

(B) The North Carolina Attorney General argues that the statute was passed to preserve the neighborhood school concept. Under his interpretation, the statute prohibits assignment and bussing inconsistent with the neighborhood school concept. Thus, to disestablish a dual system the district court could, consistent with the statute, *only* order the board to geographically zone the attendance areas so that, as nearly as possible, each student would be assigned to the school nearest his home regardless of his race. Implicit in this argument is that any school system is *per se* unitary if it is zoned according to neighborhood patterns that are not the result of officially sanctioned racial discrimination. Although the Attorney General emphasizes the expression of state policy by the Legislature in favor of the neighborhood school concept, he recognizes, of course, that the statute also permits freedom of choice if a school board voluntarily adopts such a plan. Thus, the plaintiffs and the Attorney General read the statute in much the same way: that it limits lawful methods of accomplishing desegregation to nongerrymandered geographic zoning and freedom of choice.

(C) The school board's interpretation of the statute is more ingenious. The board concedes that the statute prohibits assignment according to race, assignment to achieve racial balance, and involuntary bussing for either of these purposes, but contends that the facial prohibitions of the statute only apply to prevent a school board from doing more than necessary to attain a unitary system. The argument is that since the statute only begins to operate once a unitary system has been established, it in no way interferes with the board's constitutional duty to desegregate the schools. Counsel

goes on to insist that Charlotte-Mecklenburg presently has a unitary system and, therefore, that the state court constitutionally applied the statute to prevent further unnecessary racial balancing.

(D) Plaintiffs in the *Harris* suit contend (1) that in 42 U.S.C. §§ 2000c(b) and 2000c–6(a) (2) (1964) [3] Congress expressly prohibited assignment and bussing to achieve racial balance, (2) that to compel a child to attend a school on account of his race or to compel him to be involuntarily bussed to achieve a racial balance violates the principle of Brown v. Bd. of Ed. of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and (3) that N.C.Gen.Stat. § 115–176.1 merely embodies the principle of the neighborhood school in accordance with *Brown* and the Civil Rights Act of 1964. We may dispose of the first contention at once. The statute "cannot be interpreted to frustrate the constitutional prohibition [against segregated schools]." United States v. School Dist. 151 of Cook Co. Ill., 404 F.2d 1125, 1130 (7th Cir. 1968).

(E) Plaintiffs in the *Moore* suit argue that the district court order of February 5, 1970, was in contravention of *Brown* and, therefore, that the state court order in their suit was justified. However, the *Moore* plaintiffs also argue that certain parts of the second and third paragraphs in the state statute are unconstitutional because they give the school board the authority to assign children to schools for whatever reasons the board deems necessary or sufficient. The *Moore* plaintiffs interpret these portions of the statute as permitting assignment and bussing on the basis of race contrary to *Brown* and the Fourteenth Amendment.

## III.

■ Federal courts are reluctant, as a matter of comity and respect for state legislative judgment and discretion, to strike down state statutes as unconstitutional, and will not do so if the statute reasonably can be interpreted so as not to conflict with the federal Constitution. But to read the statute as innocuously as the school board suggests would, we think, distort and twist the legislative intent. We agree with plaintiffs and the Attorney General that the statute limits the remedies otherwise available to school boards to desegregate the schools. The harder question is whether the limitation is valid or conflicts with the Fourteenth Amendment. We think the question is not so easy, and the statute not so· obviously unconstitutional, that the question may lawfully be answered by a single federal judge, see Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and we reject plaintiffs' attack upon our jurisdiction. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); C. Wright, Law of Federal Courts § 50 at 190 (2d ed. 1970).

In Green v. County School Bd. of New Kent Co., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), the Supreme Court declared that a school board must take effective action to establish a unitary, nonracial system, if it is not already operating such a system. The Court neither prohibited nor prescribed spe-

---

3. § 2000c:
    As used in this subchapter—
    *    *    *    *    *
    (b) "Desegregation" means the assignment of students to public schools and within such schools without regard to their race, color, religion, or national origin, but "desegregation" shall not mean the assignment of students to public schools in order to overcome racial imbalance.
    § 2000c–6(a):

(2) [P]rovided that nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards.

cific types of plans, but, rather, emphasized that it would judge each plan by its ultimate effectiveness in achieving desegregation. In *Green* itself, the Court held a freedom-of-choice plan insufficient because the plan left the school system segregated, but stated that, under the circumstances existing in New Kent County, it appeared that the school board could achieve a unitary system either by simple geographical zoning or by consolidating the two schools involved in the case. 391 U.S. at 442, n. 6, 88 S.Ct. 1689. Under *Green* and subsequent decisions, it is clear that school boards must implement plans that work to achieve unitary systems. Northcross v. Bd. of Ed. of Memphis, Tennessee, City Schools, 397 U.S. 232, 90 S.Ct. 891, 25 L.Ed.2d 246 (1970); Alexander v. Holmes Co. Bd. of Ed., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969). Plans that do not produce a unitary system are unacceptable.[4]

■ We think the enunciation of policy by the legislature of the State of North Carolina is entitled to great respect. Federalism requires that whenever it is possible to achieve a unitary system within a framework of neighborhood schools, a federal court ought not to require other remedies in derogation of state policy. But if in a given fact context the state's expressed preference for the neighborhood school cannot be honored without preventing a unitary system, it is the former policy which must yield under the Supremacy Clause.

■ Stated differently, a statute favoring the neighborhood school concept, freedom-of-choice plans, or both can validly limit a school board's choice of rem-

edy only if the policy favored will not prevent the operation of a unitary system. That it may or may not depends upon the facts in a particular school system. The flaw in this legislation is its rigidity. As an expression of state policy, it is valid. To the extent that it may interfere with the board's performance of its affirmative constitutional duty to establish a unitary system, it is invalid.

■ The North Carolina statute, analyzed in light of these principles, is unconstitutional in part. The first paragraph of the statute reads:

> No person shall be refused admission into or be excluded from any public school in this State on account of race, creed, color or national origin. No school attendance district or zone shall be drawn for the purpose of segregating persons of various races, creeds, colors or national origins from the community.

There is nothing unconstitutional in this paragraph. It is merely a restatement of the principle announced in Brown v. Bd. of Ed. of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown* I).

■ The third paragraph of the statute reads:

> The provisions of this article shall not apply to a temporary assignment due to the unsuitability of a school for its intended purpose nor to any assignment or transfer necessitated by overcrowded conditions or other circumstances which, in the sole discretion of the school board, require assignment or reassignment.

---

4. The reach of the Court's mandate is not yet clear:

> [A]s soon as possible * * * we ought to resolve some of the basic practical problems when they are appropriately presented including whether, as a constitutional matter, any particular racial balance must be achieved in the schools; to what extent school districts and zones may or must be altered as a constitutional matter; to what extent transportation may or must

be provided to achieve the ends sought by prior holdings of the Court.
Northcross v. Bd. of Ed. of Memphis, Tennessee, City Schools, 397 U.S. 232, 90 S.Ct. 891, 25 L.Ed.2d 246 (1970) (Chief Justice Burger, concurring). For our purposes, it is sufficient to say that the mandate applies to require "reasonable" or "justifiable" solutions. *See generally* Fiss, Racial Imbalance in the Public Schools: The Constitutional Concepts, 78 Harv.L.Rev. 564 (1965).

This paragraph merely allows the school board noninvidious discretion to assign students to schools for valid administrative reasons. As we read it, it does not relate to race at all and, so read, is constitutional.

■ The fourth paragraph provides:

The provisions of this article shall not apply to an application for the assignment or reassignment by the parent, guardian or person standing in loco parentis of any pupil or to any assignment made pursuant to a choice made by any pupil who is eligible to make such choice pursuant to the provisions of a freedom of choice plan voluntarily adopted by the board of education of an administrative unit.

This paragraph relieves school boards from compliance with the statute where they are implementing voluntarily adopted freedom-of-choice plans within their systems. It does not require the boards to adopt freedom of choice in any particular situation, but leaves them free to comply with their constitutional duty by any effective means available, including, where it is appropriate, freedom of choice. So interpreted, the paragraph is constitutional.

■■ The second paragraph of the statute contains the constitutional infirmity. It reads:

Where administrative units have divided the geographic area into attendance districts or zones, pupils shall be assigned to schools within such attendance districts; provided, however, that the board of education of an administrative unit may assign any pupil to a school outside of such attendance district or zone in order that such pupil may attend a school of a specialized kind including but not limited to a vocational school or school operated for, or operating programs for, pupils mentally or physically handicapped, or for any other reason which the board of education in its sole discretion deems sufficient. No student shall be assigned or compelled to attend any school on account of race, creed, color

or national origin, or for the purpose of creating a balance or ratio of race, religion or national origins. Involuntary bussing of students in contravention of this article is prohibited, and public funds shall not be used for any such bussing.

The first sentence of the paragraph presents no greater constitutional problem than the third and fourth paragraphs of the statute, discussed above. It allows school boards to establish a geographically zoned neighborhood school system, but it does not require them to do so. Consequently, this sentence does not prevent the boards from complying with their constitutional duty in circumstances where zoning and neighborhood school plans may not result in a unitary system. The clause in the first sentence permitting assignment for "any other reason" in the board's "sole discretion" we read as meaning simply that the school boards may assign outside the neighborhood school zone for noninvidious administrative reasons. So read, it presents no difficulty. The second and third sentences are unconstitutional. They plainly prohibit school boards from assigning, compelling, or involuntarily bussing students on account of race, or in order to racially "balance" the school system. Green v. County School Bd. of New Kent Co., 391 U.S. 430, 88 S.Ct. 1689, 20 L. Ed.2d 716 (1968); Brown v. Bd. of Ed. of Topeka, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) (*Brown* II), and Brown v. Bd. of Ed. of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown* I), require school boards to consider race for the purpose of disestablishing dual systems.

■ The Constitution is not colorblind with respect to the affirmative duty to establish and operate a unitary school system. To say that it is would make the constitutional principle of *Brown* I and II an abstract principle instead of an operative one. A flat prohibition against assignment by race would, as a practical matter, prevent school boards from altering existing dual systems. Consequently, the statute clearly contravenes

the Supreme Court's direction that boards must take steps adequate to abolish dual systems. See Green v. County School Bd. of New Kent Co., 391 U.S. 430, 437, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). As far as the prohibition against racial "balance" is concerned, a school board, in taking affirmative steps to desegregate its system, must always engage in some degree of balancing. The degree of racial "balance" necessary to establish a unitary system under given circumstances is not yet clear, see Northcross v. Bd. of Ed. of Memphis, Tennessee, City Schools, 397 U.S. 232, 90 S.Ct. 891, 25 L.Ed. 246 (1970) (Chief Justice Burger concurring), but because any method of school desegregation involves selection of zones and transfer and assignment of pupils by race, a flat prohibition against racial "balance" violates the equal protection clause of the Fourteenth Amendment. Finally, the statute's prohibition against "involuntary bussing" also violates the equal protection clause. Bussing may not be necessary to eliminate a dual system and establish a unitary one in a given case, but we think the Legislature went too far when it undertook to prohibit its use in all factual contexts. To say that bussing shall not be resorted to unless unavoidable is a valid expression of state policy, but to flatly prohibit it regardless of cost, extent and all other factors—including willingness of a school board to experiment—contravenes, we think, the implicit mandate of *Green* that all reasonable methods be available to implement a unitary system.

Although we hold these statutory prohibitions unconstitutional as violative of equal protection, it does not follow that "bussing" will be an appropriate remedy in any particular school desegregation case. On this issue we express no opinion, for the question is now on appeal to the United States Court of Appeals for the Fourth Circuit and is not for us to decide.

It is clear that each case must be analyzed on its own facts. See Green v. County School Bd. of New Kent Co., 391 U.S. 430, 88 S.Ct. 1689 (1968). The legitimacy of the solutions proposed and ordered in each case must be judged against the facts of a particular school system. We merely hold today that North Carolina may not validly enact laws that prevent the utilization of any reasonable method otherwise available to establish unitary school systems. Its effort to do so is struck down by the equal protection clause of the Fourteenth Amendment and the Supremacy Clause (Article VI, clause 2 of the Constitution).

## IV.

As we have no cause to doubt the sincerity of the various defendants, the plaintiffs' motion to hold them in contempt for interference with the district court's orders and their request for an injunction against enforcement of the statute will be denied. We believe the defendants, including the state court plaintiffs, will, pending appeal, respect this court's judgment, which applies statewide with respect to the constitutionality of the statute.

Several of the parties have moved to be dismissed from the case, alleging various grounds in support of their motions. Because of the view we take of this suit and the limited relief we grant, the motions to dismiss become immaterial. The school board is undeniably a proper party before the court on the constitutional issue, since it is a party to the desegregation suit. We can, therefore, consider and adjudge the validity of the statute, regardless of the position of the other parties. That we consider the substantive arguments of all the parties in no way harms those who have moved to be dismissed.

An appropriate judgment will be entered in accordance with this opinion.