# NORTH CAROLINA STATE BOARD OF EDUCATION ET AL. *v.* SWANN ET AL.

No. 498.   Argued October 13, 1970—Decided April 20, 1971

BURGER, C. J., delivered the opinion for a unanimous Court.

*Andrew A. Vanore, Jr.,* Assistant Attorney General of North Carolina, argued the cause for appellants.   With him on the brief were *Robert B. Morgan,* Attorney General, and *Ralph Moody,* Deputy Attorney General.

*James M. Nabrit III* argued the cause for appellees. With him on the brief were *Jack Greenberg, Norman J. Chachkin, J. LeVonne Chambers, C. O. Pearson,* and *Anthony G. Amsterdam.*

*Solicitor General Griswold* and *Assistant Attorney General Leonard* filed a brief for the United States as *amicus curiae.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This case is here on direct appeal pursuant to 28 U. S. C. § 1253 from the judgment of a three-judge court in the United States District Court for the Western District of North Carolina.   The District Court declared unconstitutional a portion of the North Carolina General

Statutes known as the Anti-Busing Law,[1] and granted an injunction against its enforcement.[2] The proceeding before the three-judge court was an ancillary proceeding connected with the school desegregation case heretofore discussed, *Swann* v. *Charlotte-Mecklenburg Board of Education, ante,* p. 1. The instant appeal was taken by the North Carolina State Board of Education and four state officials. We granted the Charlotte-Mecklenburg school board's motion to join in the appeal, 400 U. S. 804 (1970).

When the litigation in the *Swann* case recommenced in the spring of 1969, the District Court specifically directed that the school board consider altering attendance areas, pairing or consolidation of schools, bus transportation of students, and any other method which would effectuate a racially unitary system. That litigation was actively prosecuted. The board submitted a series of proposals, all rejected by the District Court as inadequate. In the midst of this litigation over the remedy to implement the District Court's order, the North Carolina Legislature enacted the anti-busing bill, set forth in relevant part in footnote 1.

Following enactment of the anti-busing statute the plaintiffs in the *Swann* case obtained leave to file a sup-

---

[1] So far as here relevant, N. C. Gen. Stat. § 115–176.1 (Supp. 1969) reads as follows:

"No student shall be assigned or compelled to attend any school on account of race, creed, color or national origin, or for the purpose of creating a balance or ratio of race, religion or national origins. Involuntary bussing of students in contravention of this article is prohibited, and public funds shall not be used for any such bussing."

[2] 312 F. Supp 503 (1970). The opinion as printed grants only declaratory relief. However, the District Court amended its original opinion by withdrawing Part V and entering an order dated June 22, 1970, which enjoined all parties "from enforcing, or seeking the enforcement of," the portion of the statute found unconstitutional.

plemental complaint which sought injunctive and declaratory relief against the statute. They sought to convene a three-judge court, but no action was taken on the requests at that time because the school board thought that the anti-busing law did not interfere with the school board's proposed plan to transport about 4,000 Negro children to white suburban schools. 306 F. Supp 1291 (WDNC 1969). Other parties were added as defendants by order of the District Court dated February 25. In addition, certain persons who had brought a suit in state court to enjoin or impede the order of the federal court, the attorneys for those litigants, and state judges who at various times entered injunctions against the school authorities and blocked compliance with orders of the District Court were also joined; a three-judge court was then convened.

We observed in *Swann, supra,* at 16, that school authorities have wide discretion in formulating school policy, and that as a matter of educational policy school authorities may well conclude that some kind of racial balance in the schools is desirable quite apart from any constitutional requirements. However, if a state-imposed limitation on a school authority's discretion operates to inhibit or obstruct the operation of a unitary school system or impede the disestablishing of a dual school system, it must fall; state policy must give way when it operates to hinder vindication of federal constitutional guarantees.

The legislation before us flatly forbids assignment of any student on account of race or for the purpose of creating a racial balance or ratio in the schools. The prohibition is absolute, and it would inescapably operate to obstruct the remedies granted by the District Court in the *Swann* case. But more important the statute exploits an apparently neutral form to control school assignment plans by directing that they be "color blind"; that requirement, against the background of segregation,

would render illusory the promise of *Brown* v. *Board of Education*, 347 U. S. 483 (1954). Just as the race of students must be considered in determining whether a constitutional violation has occurred, so also must race be considered in formulating a remedy. To forbid, at this stage, all assignments made on the basis of race would deprive school authorities of the one tool absolutely essential to fulfillment of their constitutional obligation to eliminate existing dual school systems.

Similarly, the flat prohibition against assignment of students for the purpose of creating a racial balance must inevitably conflict with the duty of school authorities to disestablish dual school systems. As we have held in *Swann*, the Constitution does not compel any particular degree of racial balance or mixing, but when past and continuing constitutional violations are found, some ratios are likely to be useful starting points in shaping a remedy. An absolute prohibition against use of such a device—even as a starting point—contravenes the implicit command of *Green* v. *County School Board*, 391 U. S. 430 (1968), that all reasonable methods be available to formulate an effective remedy.

We likewise conclude that an absolute prohibition against transportation of students assigned on the basis of race, "or for the purpose of creating a balance or ratio," will similarly hamper the ability of local authorities to effectively remedy constitutional violations. As noted in *Swann, supra*, at 29, bus transportation has long been an integral part of all public educational systems, and it is unlikely that a truly effective remedy could be devised without continued reliance upon it.

The remainder of the order of the District Court is affirmed for the reasons stated in its opinion, 312 F. Supp. 503.

*Affirmed.*