**Carolyn EATON et al., Plaintiffs,**

v.

**NEW HANOVER COUNTY BOARD OF EDUCATION, Defendant.**

**Civ. No. 1022.**

United States District Court,
E. D. North Carolina,
Wilmington Division.

July 23, 1971.

———◆———

C. O. Pearson, Durham, N. C., Robert R. Bond, Wilmington, N. C., Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., for plaintiffs.

William L. Hill II, Wilmington, N. C., for defendant.

MEMORANDUM AND ORDER

BUTLER, Chief Judge.

On August 2, 1968, following the decisions of the Supreme Court in Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 20 L.Ed.2d 716 (1968); Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), and Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968), this court found that the New Hanover County public school system was an unconstitutional, racially dual system and directed that it be converted to a unitary system at the earliest practicable date. Since that date numerous evidentiary hearings on several proposed plans and amended plans of desegregation have been held. Although the court has approved interim plans which showed promise of converting the New Hanover County School System into a unitary non-racial system as required by law, the necessary result was not accomplished.

At the beginning of the 1970–1971 school year, the school system had 19,537 pupils in 30 schools; approximately 27% of the pupils were black and 73% white. Two of the schools were all-white, and an additional ten were over 90% white, including two integrated schools having only one black pupil each. Three schools were over 90% black. Obviously, these 15 schools at least are racially identifiable under the existing plan.

The school board having failed to adopt an effective and comprehensive plan of desegregation this court on June 21, 1971, designated the United States Office of Education as its consultant to develop such a plan in cooperation with the school board's administrative staff. Plaintiffs have offered no objections to the plan.

On July 15, 1971, the school board filed written objections to the plan submitted by the United States Office of Education. In addition to general objections to the plan, the school board specifically objects on the ground that

the plan will require an additional 38 school buses, and that "[d]ue to the costs involved, the uncertainty of available funds to buy extra buses, the necessity of obtaining additional trained bus drivers, the inconvenience to children and parents, the additional time and hazards of bus travel, the defendant objects to the desegregation plan proposed by the Department of Health, Education and Welfare and the plaintiffs in this case."

In Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the Supreme Court held that state-enforced segregation of races in public schools is discriminatory and unconstitutional.

In a long line of subsequent decisions the Court has held firmly to that pronouncement. In Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) the Supreme Court said that school boards are "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch," and that "[t]he burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work *now*. The obligation of the district courts, as it always has been, is to assess the effectiveness of a proposed plan in achieving desegregation."

In Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S. Ct. 1267, 1282, 28 L.Ed.2d 554 (1971), the Supreme Court approved the transportation of students to correct state-enforced racial school segregation. The Court said:

"Bus transportation has been an integral part of the public education system for years, and was perhaps the single most important factor in the transition from the one-room schoolhouse to the consolidated school. Eighteen million of the nation's public school children, approximately 39%, were transported to their schools by bus in 1969–1970 in all parts of the country.

The importance of bus transportation as a normal and accepted tool of educational policy is readily discernible * * *."

And in North Carolina State Board of Education et al. v. Swann et al., 402 U.S. 43, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971) the Court said:

" * * * bus transportation has long been an integral part of all public educational systems, and it is unlikely that a truly effective remedy could be devised without continued reliance upon it."

■ In New Hanover County desegregation of the public school cannot be accomplished without transportation of students.

" * * * [T]ransportation, where it is needed, is as essential to education as any other element. Its cost is as much a part of the total expense, except at times in amount, as the cost of textbooks, of school lunches, of athletic equipment, of writing and other materials; indeed of all other items composing the total burden. * * * No less essential is [transportation], or the payment of its cost, than the very teaching in the classroom or payment of the teacher's sustenance." Everson v. Board of Education, 330 U.S. 1, 47–48, 67 S.Ct. 504, 527, 91 L.Ed. 711 (1947) (dissenting opinion).

The 38 additional buses required to desegregate the school system of New Hanover County are substantially less than the number required to desegregate the public schools in several other city and county systems in North Carolina. The school authorities in many other school districts have not found insurmountable the task of furnishing the additional transportation required to implement newly approved plans of desegregation. The court finds that the New Hanover County School Board can likewise provide the additional transportation required to effectively desegregate its school system.

For the reasons set forth herein the New Hanover County Board of Educa-

tion is directed to implement the plan of desegregation prepared by the United States Office of Education in cooperation with the school board's administrative staff and presented to the court and counsel in conference on July 13, 1971.

█ The plan hereby adopted is effective to convert the New Hanover County School System to a unitary system. There will no longer be black schools and white schools but just schools as required by law. *Green,* supra, 391 U.S. 430, 88 S.Ct. p. 1696. The ratio of the races in each school will more nearly reflect the ratio in the school system as a whole  Under this plan all of the schools and their students will share equitably in the burdens and benefits of desegregation.

In ordering this plan the court is relying upon the full record in this cause. It is upon this record, developed through numerous evidentiary hearings, that the court finds the plan to be feasible, workable and practicable and within the capacity of the school board to implement. Swann v. Charlotte-Mecklenburg Board of Education, supra.

It is therefore ordered as follows:

1. All findings and statements of fact in this memorandum and order shall be deemed conclusions of law and all conclusions of law shall be deemed findings of fact as necessary in support of this order.

2. Commencing with the 1971–72 school year the defendant school board shall implement the plan of desegregation prepared by the United States Office of Education in cooperation with the school board's administrative staff and attached hereto as an appendix and made a part of this memorandum and order. This order is not limited to the student assignment and school organization provisions of the plan, but also includes those provisions of the plan relating to School Construction and Site Selection, Transportation, and Faculty Desegregation. The school board in administering the plan should give consideration to the Suggestions for Plan Implementation.

3. All prior orders of this court not inconsistent with this order shall remain in full force and effect.

4. The defendant school board shall make space available in the school to which any student elects to attend pursuant to a majority-to-minority transfer.

5. Within fifteen days after the beginning of the 1971–72 school year, the school board shall file with the court, with a copy to counsel for the plaintiffs, a report setting forth the number of pupils, by race and grade, actually attending each school within the system and the number of teachers, by race and grade or subject, assigned to each school within the system. A similar report shall be filed within fifteen days after the beginning of the second semester.

6. Jurisdiction of this matter is retained.