Wayne **MARTIN** et al., Plaintiffs,

v.

**EVANSVILLE – VANDERBURGH SCHOOL CORPORATION OF EVANS-VILLE, VANDERBURGH COUNTY, INDIANA, Defendant.**

**No. EV 71–C–79.**

United States District Court, S. D. Indiana, Evansville Division.

Sept. 5, 1972.

Ronald Warrum, Evansville, Ind., for plaintiffs.

Joe S. Hatfield, Evansville, Ind., Lewis C. Bose, Indianapolis, Ind., for defendant.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

This cause came on for hearing on August 11, 1972, on plaintiffs' petition for a preliminary injunction, enjoining the defendant from operating its public school system in a racially discriminatory manner, in violation of the Fourteenth Amendment rights of plaintiff Negro children to equal protection of the laws. At the conclusion of the evidence, which was largely undisputed, the Court ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Rule 65(a)(2), Federal Rules of Civil Procedure. The Court thereupon entered a permanent injunction against the defendant, pursuant to partial findings of fact and conclusions of law expressed orally from the bench. This memorandum amplifies and reduces to writing such findings and conclusions, *nunc pro tunc,* in accordance with Rule 52(a), F.R.Civ.P.

### Background Facts

Defendant is a public school corporation organized under the laws of the State of Indiana, with geographical boundaries coterminous with Vander-

burgh County, Indiana. The City of Evansville, a city with a 1970 population of 138,764, is located within the county and a substantial number of Negroes are included in its total population. During the school year 1971–72 Negro children made up 9.8% of the elementary school enrollment in defendant's schools.

Until at least 1949 [1] the public schools operated by Evansville School Corporation, one of the school corporations merged into defendant in 1958, were racially segregated, as was stipulated by the parties. Not only was segregation practiced by such corporation as to children living within its boundaries, but it cooperated in maintaining all white public schools in communities outside the borders of Vanderburgh County by accepting enforced transfers of Negro pupils from such places as Boonville and Yankeetown, in Warrick County, and Rockport,[2] in Spencer County, to its all black schools located in central Evansville.

In 1962, defendant discontinued high school classes at the Lincoln school, theretofore its all-Negro high school. In 1970 it adopted a plan for high school students which resulted in Negro students being assigned to the five high schools in the system on a well integrated basis. No such plan was adopted at that time to desegregate the racially identifiable grade schools. It was not until November 17, 1971, that the defendant, after pressure from the United States Department of Health, Education and Welfare, adopted a plan which would have accomplished a degree of progress in this regard.

The 1971 plan was attacked from two directions. The plaintiffs in this action, black pupils and their parents, maintained that it did not go far enough to eliminate the vestiges of racial segregation, as required by the Fourteenth Amendment, and sought injunctive relief to require defendant to adopt a more comprehensive plan. At about the same time, another action, brought against the defendant by certain white children and their parents, was filed in the Vanderburgh Circuit Court and removed to this court. The latter action sought to enjoin implementation of the November 17, 1971, plan on the ground that defendant had no right to enact any plan at all which would alter the so-called "neighborhood school" system.

The action brought by the whites was tried by this Court in February, 1972, and judgment was entered for the defendant school corporation.[3] It was not necessary in such case for the Court to consider the constitutional implications of the school corporation's past practices, but instead the finding was simply that the defendant, in its discretion, had the right to take action tending to reduce the then existing segregation, both under the 1949 Indiana Act and as held in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

The present action was placed on this Court's trial calendar for the June, 1972 term. Meanwhile, however, the defendant continued to consider the problem of elementary school desegregation and adopted a revised plan under date of May 10, 1972, to become effective for the 1972–73 school year. This plan was satisfactory to plaintiffs, and on June 15, 1972, the parties filed a stipulation of dismissal, which was approved by the Court the following day. In its order of dismissal, the Court found that the acts taken and to be taken by the defendant (the adoption of the new plan and its

---

1. In 1949 the General Assembly of Indiana enacted a statute, Acts 1949, Ch. 186, p. 603, Burns Ind.Stat.Ann. § 28–6106 et seq., IC 1971, 20–8–6–1, which banned racial segregation in tax supported educational facilities within the state.

2. It is 31 miles from Rockport to Evansville; thus Negro pupils were required to be bussed a round trip distance of 62 miles per day to attend defendant's segregated schools.

3. This Court's decision has recently been affirmed. Adams et al. v. Evansville-Vanderburgh School Corporation, et al., No. 72–1413, 7 Cir., August 21, 1972 (slip opinion).

implementation), voluntarily and not pursuant to court order, were proper and would satisfy the obligations of the defendant under the equal protection clause of the Fourteenth Amendment. The order further provided that the dismissal would be without prejudice in the event the defendant failed to carry out the actions contemplated by the May 10 plan.

The defendant's board is made up of seven members, who adopted the May 10 plan by a vote of 4–3. The term of one of those members who voted in the affirmative expired on or about June 30, 1972, and a new member was appointed by the Mayor of Evansville. On August 2, 1972, with the new member voting in the affirmative, the reconstituted board adopted a resolution purporting to rescind the court approved May 10 plan, and thereafter, on August 7, adopted a different plan for the 1972–73 school year. Meanwhile, on August 4, plaintiffs filed their motion to reinstate this action for failure of the defendant to implement the May 10 plan.

On August 8, 1972, the Court granted plaintiffs' motion to reinstate and reopen the case, pursuant to its previous order of June 16, 1972, and Rule 60(b), Federal Rules of Civil Procedure. The hearing of August 11 followed, after notice to the defendant, and evidence was heard on the merits of plaintiffs' second amended complaint.

### Operative Facts

Prior to the year 1949, total segregation of Negro pupils was the rule in defendant's schools. In that year, three schools were operated for blacks: The Chestnut-Walnut school, for grades K–5, the Third Avenue school, for grades 1–7, and the Lincoln school, for grades K–12. The Third Avenue school was located in a white residential area, but no whites attended the school; on the other hand, black pupils were bussed to the school by defendant from other sections of the city of Evansville. The situation at Third Avenue remained the same until the school was closed in 1957.

Following the enactment of the 1949 Indiana Desegregation Act, the defendant followed a familiar ploy[4] by adopting optional attendance zones for areas where the population was demographically mixed. This resulted in white pupils choosing to attend white schools, and black pupils for the most part "choosing" to attend black schools. However, during the period 1949–56 a few blacks chose to attend and did attend elementary school at Wheeler, Stanley Hall, or Cedar Hall. When the Third Avenue school was closed in 1957, its pupils were sent to Chestnut-Walnut and Lincoln. When Lincoln high school was discontinued in 1962, the Chestnut-Walnut school was discontinued, and its pupils assigned to Lincoln, now a K–8 elementary school.

During their respective periods of existence, Third Avenue and Chestnut-Walnut had all black faculties. The same was true, with rare exceptions, at Lincoln until the past three school years, during which years the percentage of black faculty was, respectively, 66.6%, 63.6% and 48.4%. During the 1971–72 school year the percentage of Negro enrollment at Lincoln was 99.82%, and it had never been lower than approximately 99% at any time in its existence, although for many years the residential area immediately to the south and east of the school was predominately white, and white pupils reside within walking distance of the school at the present time.

As a result of defendant's racial policies in establishing gerrymandered school districts, the percentage of Negro pupils in the Stanley Hall elementary school had risen to 59.94% at the time plaintiffs' action was filed, and in the Wheeler school to 76.04%. Although only 6% of all faculty personnel is Ne-

---

4. See United States v. Board of Sch. Com'rs of Indianapolis, Ind., 332 F.Supp. 655, at 668 (S.D.Ind.1971).

gro, the percentages in these two schools were 21.9% and 20.0%, respectively.

The plan adopted by defendant November 17, 1971, as modified and expanded by its amendment of May 10, 1972, would have closed the Stanley Hall and Wheeler schools, together with the Armstrong School, a rural, white school with an insufficient number of pupils, and would have reassigned pupils from the closed schools, and from the Lincoln school and other schools in the system so that all of the elementary schools in the system, save one, would have had Negro pupils, and only one additional school would have had a Negro enrollment of less than 1%; Lincoln's enrollment would have been reduced to 22.6%. All faculty and staff would have been assigned throughout the system according to the Singleton plan, i. e., distributed at each school according to the total percentages of Negroes and whites employed by the defendant.

On the other hand, the plan of August 7, 1972, would leave five of the thirty-four remaining elementary schools as all white schools, and thirteen additional schools with a Negro enrollment of less than 1%. In other words, over half of the schools would remain all white, or virtually all white. Six schools would have a Negro enrollment of 20% or more, as opposed to only two under the May 10 plan. Under the August 2 plan, Lincoln would continue to have a black student body of 76.9%, and the Howard

Roosa school, never before a racially identifiable school, would become racially identifiable by having its black enrollment increased from the 1971–72 38.-63% to 51.1%! The comparative statistics for all remaining schools under both plans are set out in the footnote following.[5]

The principal reason advanced by the defendant for its August actions was that it proposed to establish a middle school program, to be fully effective in 1977, and that it was necessary for all children to attend school in their own neighborhoods "for planning purposes." Although the middle school concept may well have merit, if such schools are located so as to reduce segregation, the argument that planning can only go forward if pupils attend the nearest elementary school in the interim strikes the Court as fatuous.

### Conclusions of Law

The Court has jurisdiction of the parties and of the subject matter of this action. 28 U.S.C. §§ 1343(3), 1343(4); 42 U.S.C. § 1983; Amendment Fourteen, Constitution of the United States.

■ The defendant and its predecessor Evansville School Corporation have practiced *de jure* segregation in the operation of the Evansville, now Evansville-Vanderburgh County public school system, and have discriminated against Negro pupils in violation of the equal

| 5. Elementary Schools | 5–10–72 Board Plan | 8–2–72 Board Plan |
|---|---|---|
| Baker | 18.8 | 20.4 |
| Caze | 7.2 | .3 |
| Cedar Hall | 19.3 | 19.3 |
| Columbia | 15.9 | .6 |
| Culver | 19.3 | 21.5 |
| Cynthia Heights | .5 | .5 |
| Daniel Wertz | 2.4 | 2.4 |
| Delaware | 17.7 | 10.4 |
| Dexter | 3.7 | 17.8 |
| Evans | 5.5 | 0 |
| Fairlawn | 5.1 | 0 |
| Fulton | 5.6 | 30.6 |
| Glenwood | 28.5 | 28.5 |
| Harper | 3.4 | 18.6 |
| Harwood | 3.7 | .7 |
| Hebron | 16.6 | 15.3 |
| Helfrich Park | 8.7 | .8 |

| Elementary Schools | 5–10–72 Board Plan | 8–2–72 Board Plan |
|---|---|---|
| Highland | 11.5 | 0 |
| Howard Roosa | 19.3 | 51.1 |
| Lincoln | 22.6 | 76.9 |
| Lodge | 7.0 | .7 |
| McGary | 6.8 | 1.7 |
| Oak Hill | 9.0 | .3 |
| Perry Heights | 9.8 | .7 |
| Plaza Park | 5.0 | .6 |
| Scott | 0 | 0 |
| Stockwell | 12.6 | .7 |
| Stringtown | 5.1 | .3 |
| Tekoppel | 7.9 | 0 |
| Thompkins | 16.8 | 1.3 |
| Vogel | 8.3 | .2 |
| Washington | 6.0 | 2.6 |
| West Terrace | 8.2 | .9 |
| White | 14.0 | 14.0 |

protection clause of the Fourteenth Amendment to the Constitution of the United States. The defendant has therefore, since the day that it came into existence, been under a continuing duty to remove all vestiges of prior segregation, but has failed to do so, most notably in the matters of the Lincoln school and in the assignment of faculty. Swann v. Charlotte–Mecklenburg Bd. of Ed., *supra*; Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); United States v. Greenwood Municipal Separate School District, 406 F.2d 1086 (5 Cir. 1969); Kelley v. Altheimer, 378 F.2d 483 (8 Cir. 1967).

· ■ The defendant committed an act of *de jure* segregation when on August 2, 1972, it rescinded *its own* May 10, 1972, plan to desegregate the elementary schools. The rescission of a school desegregation plan, previously adopted by a school board pursuant to an existing duty, is unconstitutional, and the action of August 2, 1972, is a nullity. North Carolina State Bd. of Ed. v. Swann, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971). Bradley v. Milliken, 433 F.2d 897 (6 Cir. 1970); Keyes v. School District No. 1, Denver, Colorado, 303 F. Supp. 279; 313 F.Supp. 61 (D.Colo.1969, 1970).

The law is with the plaintiffs. A permanent injunction will issue, enjoining defendant from discriminating on the basis of race or color in the operation of its schools, from implementing its August 7, 1972 plan, reinstating the May 10, 1972 plan as an interim measure, and ordering the defendant to complete a final plan for elimination of the last vestiges of racial segregation from its school system before January 1, 1973. Said final plan, which may contain provisions for middle schools, shall be filed not later than January 10, 1973, for the approval of the Court.