UNITED STATES of America, Plaintiff,

Donny Brurell Buckley and Alycia Marquese Buckley, by their parent and next friend, Ruby L. Buckley, on behalf of themselves and all Negro school age children residing in the area served by original defendants herein, Intervening-Plaintiffs,

v.

The BOARD OF SCHOOL COMMISSIONERS OF the CITY OF INDIANAPOLIS, INDIANA, et al., Defendants,

Otis R. Bowen, as Governor of the State of Indiana, et al., Added Defendants,

Citizens For Quality Schools, Inc., Intervening-Defendant,

Coalition For Integrated Education, Amicus Curiae.

The BOARD OF SCHOOL COMMISSIONERS OF the CITY OF INDIANAPOLIS, INDIANA, Cross-Claimants,

v.

The METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY and

The Housing Authority of the City of Indianapolis, Cross-Defendants.

IP 68–C–225.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Aug. 1, 1975.

Charles W. Hunter, Indianapolis, Ind., for Metropolitan School District of Decatur Township.

William O. Schreckengast, Beech Grove, Ind., for Franklin Township Community School Corp.

Lewis C. Bose, William M. Evans, Indianapolis, Ind., for Metropolitan School District of Lawrence Township, Metropolitan School District of Warren Township, Metropolitan School District of Wayne Township.

Donald A. Schabel, Indianapolis, Ind., for Metropolitan School District of Perry Township.

H. William Irwin, Indianapolis, Ind., for Metropolitan School District of Pike Township.

Ben J. Weaver, Charles G. Reeder, Indianapolis, Ind., for Metropolitan School District of Washington Township.

Richard L. Brown, Indianapolis, Ind., for School City of Beech Grove.

Richard D. Wagner, Indianapolis, Ind., for School Town of Speedway.

William F. LeMond, Kurt F. Pantzer, Jr., Indianapolis, Ind., for Metropolitan Development Commission of Marion County.

Gary R. Landau, Indianapolis, Ind., for Housing Authority of the City of Indianapolis.

Harold E. Hutson, Indianapolis, Ind., for Citizens for Quality Schools Inc.

Alexander C. Ross, Samuel J. Flanagan, Jr., U. S. Dept. of Justice, Washington, D. C., John E. Hirschman, Asst. U. S. Atty., Indianapolis, Ind., for United States.

John O. Moss, John Preston Ward, Indianapolis, Ind., for Donny Brurell Buckley and Alycia Marquese Buckley.

Lawrence McTurnan, Indianapolis, Ind., for The Board of School Commissioners of the City of Indianapolis, Karl R. Kalp, Martha McCardle, William M. S. Myers, Carl J. Meyer, Paul E. Lewis, Lester E. Neal, Constance R. Valdez and W. Fred Ratcliff.

Donald P. Bogard, Asst. Atty. Gen., Indianapolis, Ind., for Otis R. Bowen, Theodore Sendak, Harold H. Negley, The Indiana State Board of Education.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

This case comes before the Court for further hearing, pursuant to the direction of the Court of Appeals for the Seventh Circuit. 503 F.2d 68 (1974) cert. den. 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86, 43 U.S. L.W. 3571 (1975). The previous history of the case, and of various related actions, is fully set out at 503 F.2d 71–75, and will not be repeated here. The names of certain defendants sued in a representative capacity, and whose terms have expired, have been deleted and their successors substituted.

This Court was specifically directed to determine whether the establishment of the Uni-Gov boundaries of the City of Indianapolis [1] without a like re-establishment of Indianapolis Public Schools boundaries warrants an interdistrict remedy within Uni-Gov in accordance with *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). Pursuant to such direction, a further evidentiary hearing was held, beginning March 18, 1975, and the parties have submitted both oral argument and briefs, all of which have been considered. The Court has also given consideration to other matters raised by the pleadings and evidence, and to matters of Indiana law, all as will more fully appear.

The defendant Board of School Commissioners (IPS) on September 29, 1971, brought into the case as additional defendants, The Metropolitan Development Commission of Marion County (Commission) and The Housing Authority of the City of Indianapolis (HACI), and by way of a cross-complaint charged them with implementing policies which contributed to the segregation of IPS. Declaratory relief was demanded. These issues were not taken up heretofore, but in its pretrial entry of December 13, 1974 the Court ruled that, in addition to the Uni-Gov issue, the issue of the effect, if any, of the housing and zoning laws, rules, regulations and customs in Marion County, Indiana and its various political subdivisions upon the de jure segregation of IPS, would be considered. The greater part of the evidence introduced at the March hearing was on the latter subject.

The issue regarding housing and zoning laws was not mooted by *Milliken*. To the contrary, the concurring opinion of Mr. Justice Stewart, which constituted the decisive vote as between an otherwise evenly balanced Court, stated, "Were it to be shown . . . that state officials had contributed to the separation of the races by drawing or redrawing school district lines . . . ; or by purposeful, racially discriminatory use of state housing or zoning laws, then a decree calling for transfer of pupils across district lines or for restructuring of district lines might well be appropriate." 418 U.S. at 755, 94 S.Ct. at 3132.

The evidence is undisputed that each and every public housing project constructed and operated by the added defendant HACI is located within IPS territory, in some instances just across the street from territory served by one of the added defendant school corporations. Each of such locations was approved—in some instances selected in the first place—by the added defendant Commission. The latter institution has had county-wide zoning jurisdiction at all times during the construction of 10 out of the 11 public housing projects for families, and HACI has at all times had the authority to erect public housing within the City of Indianapolis, and within five miles of the corporate limits of such city. The residents of said public housing projects are approximately 98% black (except in projects for the elderly), and their children all attend school in IPS. The location of these housing projects by instrumentalities of the State of Indiana has obviously tended to cause and to perpetuate the segregation of black pupils in IPS territory.

The evidence in the record, as taken in all hearings, clearly shows that the suburban Marion County units of government, including the added defendant school corporations, have consistently resisted the movement of black citizens or black pupils into their territory. They have resisted school consolidation, they resisted civil annexation so long as civil annexation carried school annexation with it, they ceased resisting civil annexation only when the Uni-Gov Act made it clear that the schools would not be

---

1. The boundaries of the city, pursuant to Uni-Gov, are coextensive with the boundaries of Marion County, except that the cities of Beech Grove and Lawrence ("excluded cities") and the unincorporated town of Speedway ("excluded town") are permitted to carry on as separate municipal corporations within the territory of the consolidated City of Indianapolis. Citizens of these communities have a dual status—for example, a Beech Grove voter may vote for Mayor of Indianapolis, members at large of the City-County Council, Mayor of Beech Grove, and city councilmen of Beech Grove.

involved. Suburban Marion County has resisted the erection of public housing projects outside IPS territory, suburban Marion County officials have refused to cooperate with HUD on the location of such projects, and the customs and usages of both the officials and inhabitants of such areas has been to discourage blacks from seeking to purchase or rent homes therein, all as shown in detail in previous opinions of this Court.

■ In its most recent opinion, 503 F.2d at 80, the Court of Appeals specifically concluded, with this Court, that state officials of the State of Indiana "have, by various acts and omissions, promoted segregation and inhibited desegregation within IPS, so that the state, as the agency ultimately charged under Indiana law with the operation of the public schools, has an affirmative duty to assist the IPS Board in desegregating IPS within its boundaries . . . ." Inasmuch as certiorari has been denied by the Supreme Court, the finding that the State has promoted segregation and inhibited desegregation within IPS is, quite obviously, the law of the case. The new findings of this Court that the Commission and HACI have been guilty of such acts simply amplifies such earlier findings. The action of these agencies in confining poor blacks to the inner city has directly and proximately contributed to cause the suburban school districts within Marion County, other than Washington Township and Pike Township, to be and remain segregated white schools, with segregated white faculties and administrative staffs.

The evidence clearly shows that at the time of the passage of the Uni-Gov Act in 1969, various annexation plans and school consolidation plans had bogged down on the local level because of the aforementioned opposition of the suburban school corporations within Marion County, and their patrons. However, the General Assembly of Indiana, with its members elected on a state-wide basis, was not, or should not have been, subservient to local pressures, and undoubtedly could have legislated a county-wide school system for Marion County as easily as it legislated a county-wide civil government. Under existing law, both Federal as expressed in *Brown v. Board of Education*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), and in *Green v. County School Board*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), and the law of Indiana as expressed in Acts 1949, Ch. 186, p. 603, Burns Ind.Stat.Ann. §§ 28–6106—28–6112 (1970), it had a duty to alleviate the segregated condition then existing in IPS. When the General Assembly expressly eliminated the schools from consideration under Uni-Gov, it signaled its lack of concern with the whole problem and thus inhibited desegregation with IPS.

■ The Court finds that the establishment of the Uni-Gov boundaries without a like re-establishment of IPS boundaries, given all of the other facts and circumstances set out in this and former opinions of this Court, warrants a limited interdistrict remedy within all of Marion County, Indiana, as hereafter described.

Recently, the General Assembly has taken some steps to meet its duty under the law—specifically by passing P.L. 94 of the Acts of 1974, Burns Ind.Stat.Ann. §§ 28–5031—28–5040, I.C.1971, 20–8.1–6.5–1, et seq., as added 1974. The Court of Appeals in its opinion at 503 F.2d 74 refers to this statute as "rigidly limited in its application," which may well be, but in any event it does expressly recognize the power both of United States district courts and of the courts of the State to make orders regarding the transfer of pupils from one school corporation to another if certain conditions be found to exist, and affords a State policy and means for paying the costs of such inter-district relief, all of which was lacking in *Milliken*.

Specifically, the statute provides a means and method whereby a transferor school corporation may pay a transferee school corporation for the cost of education of a pupil transferred from the one to the other in compliance with a court order issued under the following conditions:

(1) In a suit where the transferor or transferee corporation or corporations are

parties, the Court must have found the following:

(a) A transferor corporation has violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States by practicing de jure racial segregation of the students within its borders;

(b) A unitary school system within the meaning of such amendment cannot be implemented within the boundaries of the transferor corporation; and

(c) The Fourteenth Amendment Compels the Court to order a transferor corporation to transfer its students for education to one or more transferee corporations to effect a plan of desegregation in the transferor corporation which is acceptable within the meaning of such amendment.

In the case at hand, we have a suit in which all of the school corporations in Marion County, Indiana are parties, and in which this Court has made, and now reiterates, the following findings:

(a) The defendant Board of School Commissioners of Indianapolis, Indiana (IPS) has violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States by practicing de jure racial segregation of the students within its borders. *United States v. Board of Sch. Com'rs, Indianapolis, Ind.*, 332 F.Supp. 655 (S.D.Ind.1971), aff'd 474 F.2d 81 (7 Cir.), cert. den. 413 U.S. 920, 93 S.Ct. 3066, 37 L.Ed.2d 1041 (1973).

(b) A unitary school system within the meaning of such amendment cannot be implemented within the boundaries of IPS. "In the long haul, it won't work." 332 F.Supp. at 678.

This Court found as a fact in its opinion of July 20, 1973, 368 F.Supp. 1191, et seq., that within the IPS boundaries resegregation of desegregated schools occurs when the percentage of black students in a given school approaches 25% to 30%, more or less. That finding has not been challenged by anyone. Therefore, in a school corporation in which the percentage of black pupils has now reached more than 42% over all, and

with the Court of Appeals having ordered this Court to take further steps to desegregate the same, 503 F.2d 80, the Court is placed in an impossible situation unless the transfer for education of a substantial number of black IPS pupils to school corporations other than IPS is accomplished.

The Court therefore makes the following additional finding:

(c) The Fourteenth Amendment compels the Court to order IPS to transfer a substantial number of its black students to various added defendant school corporations for education in order to effect a plan of desegregation in the transferor corporation which is acceptable within the meaning of such amendment.

■ The Court of Appeals has called the attention of this Court to the rule of law that "white flight" is not an acceptable reason for failing to dismantle a dual school system. 503 F.2d 80, citing *United States v. Scotland Neck City Board of Education*, 407 U.S. 484, 491, 92 S.Ct. 2214, 2218, 33 L.Ed.2d 75 (1970). However, it does not follow that this Court must ignore the probability of white flight in attempting to formulate guidelines for IPS to follow in accomplishing the final desegregation of its schools. In other words, as this Court sees it, white flight may not be used as an excuse for inaction; it may, however, supply the reason for a particular kind of action.

This approach requires the Court, once again, to review applicable statistics. "The Constitution does not compel any particular degree of racial balance or mixing, but when past and continuing constitutional violations are found, some ratios are likely to be useful starting points in shaping a remedy . . ." *North Carolina Bd. of Ed. v. Swann*, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971).

For the school year 1974–75, there were 77,732 pupils enrolled in IPS, excluding kindergarten and special education students. Of these 44,756, or 57.57%, were white and 32,976, or 42.43%, were black. Virtually all schools had an enrollment of at least 15%

black pupils, and 19 elementary schools and one high school had enrollments in excess of 80% black. As the Court understands the order of the Court of Appeals, this group of 20 schools must be further desegregated. As stated above, this Court has previously found that to require all schools to enroll about 42.43% black pupils would immediately accelerate white flight and unbalance the entire system beyond saving. The Court respectfully declines to stultify itself by giving any such direction.

The Metropolitan School Districts of Washington Township and Pike Township are integrating rather rapidly, as a result of demographic changes, so that Washington had a black percentage of approximately 15% and Pike a black percentage of approximately 12% for the past school year. These percentages seem likely to increase for the coming year. If the percentage of black students in the other suburban districts within Marion County were equivalent to that of Washington Township, approximately 9,525 black students would need to be transferred to such districts. The Court finds that the Fourteenth Amendment compels it to order IPS to transfer, and for the added defendant school corporations, other than Pike and Washington, to receive approximately such number of black students, over a period of time, in order to effect a plan of desegregation within IPS which is acceptable within the meaning of such amendment.

Transfers shall not include kindergarten nor special education students, and such students shall not be counted for the purpose of determining the number of transferees to each school corporation. Further, for the school year 1975–76, transfers will be limited to students in grades 1–9, inclusive, for a total of about 6,533 students, with the understanding that a student once transferred to a suburban school corporation will continue in such corporation until graduation from high school, unless the residence of such student is moved from IPS.

The number of students to be transferred to a particular school corporation shall be in such number as to cause the total enrollment of pupils in such school corporation, after the transfers have been accomplished, to be approximately 15% black. As an example, Beech Grove City Schools for the school year 1974–75 had an all white enrollment of 1,865 in grades 1–9, excluding special education. The 1,865 should be 85% of the school population after transfer; therefore 1% would be 21.9411, and 15% would be $15 \times 21.9411$ or 329. Approximately 329 black students would be transferred from IPS to Beech Grove in grades 1–9 for the coming school year. For the ensuing years, the original transferees would continue in the Beech Grove schools, and a new first grade group in an appropriate number would be transferred. Transfers by grade should be proportionate to the number of students enrolled per grade in the transferee schools for the past school year. Fortunately, the reports on classroom space filed by the added defendants reflects that, without exception, there is ample space available in which to house the transferees; also, IPS has ample transportation facilities available.

It is possible that transfers of black students to Washington Township should be made for education at the J. Everett Light Career Center; ruling on this point is reserved pending clarification as to certain statistical information in the record.

With regard to the present transfer of pupils, as above described and as will be more particularly set out in an accompanying order and judgment, the respective superintendents of the transferee school corporations involved, or their nominees, are directed to meet with the superintendent of IPS, or his nominees, forthwith in order to work out the exact names, numbers, and grades of pupils to be transferred. Reasonable deviations from exact statistical scheduling are anticipated, and may be agreed upon, subject to the approval of the Court. Disagreements, if any, shall be promptly referred to the Court for resolution. The transfers shall be effective, and transfer of pupils shall begin on the first day of the 1975–76 school year at each of the various transferee schools.

Once the transfer pupils have been identified, the defendant IPS is directed to submit to the Court a final plan for desegregation of the remaining schools within IPS. Alternate plans may be submitted, in the discretion of IPS. Such plan or plans shall consider the high schools, as well as elementary schools. Kindergarten students and special education students need not be taken into account in computing black-white ratios in the various schools. Such plan or plans shall be submitted on or before October 15, 1975 and, if one be approved, it shall be put into effect at the beginning of the second semester of the 1975–76 school year, except as the Court may otherwise order.

█ As previously found, the location by HACI of all of its public housing facilities within IPS territory has had a major influence toward keeping black students confined within IPS, while at the same time keeping the suburban school systems virtually all white. Such conduct should and will be enjoined, so as to prohibit HACI from locating any additional public housing units within the boundaries of IPS. Furthermore, HACI should and will be enjoined from reopening Lockefield Gardens, a public housing project which is now vacant, to tenants other than the elderly.

█ The case for the intervening Buckley plaintiffs and their class was filed and has been presented by John O. Moss and John Preston Ward. The Court previously found them entitled to recover their reasonable attorneys fees and expenses, pursuant to 20 U.S.C. § 1617, but no fees have as yet been awarded, and the Court of Appeals has requested a further finding on the issue. 503 F.2d 86. It is the Court's opinion that the Buckley plaintiffs should be regarded as the "prevailing parties," within the meaning of such statute, if the rulings of this Court relating to transfer of pupils

become final, since they are the only parties who have contended for a remedy going beyond the IPS strait jacket.

Orders will be entered in accordance with this memorandum.