Clifford BERRY, et al., Plaintiffs,

v.

ALAMEDA BOARD OF
SUPERVISORS, et al.,
Defendants.

No. C–89–3310–CAL.

United States District Court,
N.D. California.

Nov. 28, 1990.

Charles R. Garry, Lynn S. Carman, San Francisco, for plaintiffs.

Kelvin H. Booty, Jr., County Counsel of County of Alameda, Oakland, for defendants.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

LEGGE, District Judge.

This is an action under 42 U.S.C. § 1983 by indigent citizens of Alameda County, California. Plaintiffs allege that defendants have adopted and implemented a state constitutional limitation on real property taxes, Cal. Const. art. XIII A (1978) ("Proposition 13"), and are using that limitation in assessing taxpayers, in violation of plaintiffs' due process and equal protection rights under the United States Constitution. Plaintiffs ask this court to declare that Proposition 13 is unconstitutional as applied to raising real estate tax revenues to pay for medical services for the poor in Alameda County, and to enjoin implementation of the tax limitation by defendants.

### I.

The parties filed motions for summary judgment. This court then ruled [1] that the Tax Injunction Act, 28 U.S.C. § 1341 ("the Act"), and principles of federal-state comity preclude a federal court from exercising jurisdiction over challenges to the imple-

mentation and assessment of tax limitations enacted into a state's constitution. Plaintiffs' additional allegation, that Proposition 13 was adopted in a procedurally unconstitutional manner, was denied for failure to state a claim. The court therefore ordered this action dismissed.

However, before the court signed the order of dismissal, plaintiffs moved for reconsideration, asserting that one week after this court's announced decision, the United States Supreme Court in *Missouri v. Jenkins*, ―― U.S. ――, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), expanded the scope of federal district courts' powers to intervene in the assessment and administration of state taxes, including state constitutional tax limitations. This court therefore vacated its decision and ordered additional briefing on the application of *Missouri v. Jenkins* to this case. The parties filed additional briefs and the matter was submitted for decision.

Having considered the moving and opposing papers, the record of the case, the arguments of counsel, and the relevant authorities, this court concludes, for the reasons set forth below, that: (1) under the Act and principles of federal-state comity, this court lacks jurisdiction to interfere with California's tax limitation as requested by plaintiffs, and (2) the allegation that Proposition 13 was unconstitutionally adopted fails to state a claim. The issues are ones of law, and no fact questions are presented. Defendants' motion for summary judgment will therefore be granted and plaintiffs' motion for summary judgment denied.

### II.

Plaintiffs allege that their indigency qualifies them for certain medical benefits provided by California statutes. Specifically, they assert that they are entitled to receive an "adequate care entitlement" under the California Welfare and Institutions Code,[2]

---

**1.** The ruling was made on the record in open court at the argument of the summary judgment motions.

**2.** Cal.Welf. & Inst.Code §§ 10000—17001 (Deering 1985). The Code provides that "qualifying individuals" are entitled to:

    [H]ealth care and related remedial or preventive services ... including related social

and an "equal care entitlement" under the California Health and Safety Code.[3] Money to pay for those entitlements is raised in part by each county from their general tax revenues, Cal.Welf. & Inst.Code §§ 16700–16718 (Deering 1985).

Defendants are the County of Alameda, its Board of Supervisors and its County Auditor. Defendants assess and administer state and local tax laws in Alameda County, including the tax limitation of Proposition 13, and determine and administer the county's health care budget.

Proposition 13 was an amendment to the California constitution which was adopted by California voters on June 6, 1978 and became effective on July 1, 1981. Cal. Const. art. XIII A, § 5. Proposition 13 establishes that "[t]he maximum ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property." Id., § 1.

As a result of Proposition 13 and other financial limitations, plaintiffs allege that Alameda County "continue[s] to receive inadequate funding for State mandated programs."[4] Plaintiffs allege that the effect of Proposition 13 has been to reduce the level of medical services furnished to indigent persons in Alameda County to a level substantially below that required by the state statutes. Plaintiffs' lengthy Amended Complaint can be distilled into three alleged violations of the United States Constitution. The first violation alleges that Proposition 13, and its implementation by Alameda County, constitute invidious and intentional economic discrimination in violation of the Fourteenth Amendment.[5] The second alleges denial of due process and equal protection to indigent persons, be-

cause of the voter-initiative procedure used to adopt Proposition 13.[6] The third alleges a violation of the Fourteenth Amendment by the County Auditor. Plaintiffs' theory under the third allegation is that Cal.Gov't. Code § 29103 makes the County Auditor responsible for calculating the tax rates to be assessed by the Board of Supervisors; and an assessment based on Proposition 13 is an unconstitutional calculation of taxes, because it excludes appropriations from real property taxes for indigent medical benefits "as required by the Due Process and Equal Protection Clauses."[7]

Plaintiffs pray for injunctive and declaratory relief. They ask this court to declare that: the Proposition 13 tax limitation is unconstitutional as applied to the taxation of real property in Alameda County for purposes of funding medical benefits; and defendants have acted in excess and abuse of their discretion by implementing Proposition 13 in such a manner as to decrease the funding of those benefits. Plaintiffs seek an injunction "in the nature of a mandamus", commanding defendants not to limit real property taxes under Proposition 13 for purposes of funding state medical benefits.

### III.

The principal issue raised by these summary judgment motions is whether a federal court has subject matter jurisdiction over plaintiffs' claims regarding the assessment and administration of property taxes under the limitation of Proposition 13.

Plaintiffs allege that jurisdiction is vested in this court by 28 U.S.C. §§ 1331, 1343(3), (4), and by 42 U.S.C. § 1983.

---

services which are necessary for those receiving health care under this chapter....
....
   [T]o the extent practicable, eligible persons [shall receive health care] in the same manner employed by the public generally, and without discrimination or segregation based purely on their economic disability.
Id., § 14000.

3. Cal.Health & Safety Code § 1442.5 (Deering 1990). Section 1442,5(c) provides that "the availability of services, and the quality of the treatment received by the people who cannot

afford to pay for their health care shall be the same as that available to nonindigent people receiving health care services in private facilities in that county." Id.

4. Plaintiffs' Amended Complaint, Exhibit B (August 4, 1989 Report of Alameda County Administrator Steven C. Szalay).

5. Amended Complaint, ¶¶ 14–16.

6. Id. at ¶¶ 19–22.

7. Id. at ¶ 24.

Those statutes generally grant United States District Courts original jurisdiction over federal questions, and the authority to grant equitable and monetary relief for violations of federal civil rights.

■ Defendants argue that the Act precludes this court from taking subject matter jurisdiction.[8] The Act reads in full:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

This broad limitation on federal judicial power over state taxes prohibits declaratory and injunctive relief; *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93 (1982); *Ashton v. Cory*, 780 F.2d 816, 818–19 (9th Cir.1986); and suits for damages; *Marvin F. Poer & Co. v. Counties of Alameda*, 725 F.2d 1234, 1236 (9th Cir. 1984). Plaintiffs assert that the Act is "irrelevant" because they are not seeking an order to raise, levy, or collect taxes.

The issue of the application of the Act to this case can be broken into three questions: first, whether the rights granted by 42 U.S.C. § 1983 supplant the restraints of the Act; second, whether plaintiffs' claims for relief are within the prohibitions of the Act; and third, whether plaintiffs have a "plain, speedy, and efficient remedy" in California state courts.

### A.

■ Plaintiffs contend that the Act does not prohibit federal jurisdiction in a section 1983 action, because the claim is an alleged violation of civil rights and the tax issues are therefore incidental. However, this circuit has held that where jurisdiction over a section 1983 action conflicts with the Act, "the latter control[s]." *Kelly v. Springett*, 527 F.2d 1090, 1094 (9th Cir.1975); *accord Hawaiian Telephone Co. v. State Dep't of Labor*, 691 F.2d 905, 909 (9th Cir.1982).

Basing a complaint upon alleged violations of civil rights will not avoid the prohibitions of the Act. *Hickman v. Wujick*, 488 F.2d 875, 876 (2d Cir.1973); *see Hawaiian Telephone*, 691 F.2d at 910.

### B.

Do plaintiffs' claims come within the prohibition of the Act?

■ The Act is broadly interpreted to prohibit the use of the equity powers of federal courts in cases involving state tax matters. *Grace Brethren Church*, 457 U.S. 393, 102 S.Ct. 2498; *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir.1986). By phrasing their attack on the state tax limitation in federal constitutional terms, plaintiffs do not change the required analysis. In enacting the Act, Congress made explicit the preexisting federal equity practice of noninterference with states' internal economy and administration. *Moe v. Kootenai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976).

[T]he mere illegality or unconstitutionality of a state ... tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts....

*Id.* (quoting *Great Lakes Co. v. Huffman*, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)).[9]

On that ground and on the underlying principle of federal-state comity, this court previously ruled that the Act barred federal jurisdiction over plaintiffs' first and third claims. The question now posed by plaintiffs is whether the later United States Supreme Court decision in *Missouri v. Jenkins* changes that conclusion.

In *Jenkins*, the district court found that a school district had operated an unlawfully segregated school system. *Jenkins v. Missouri*, 593 F.Supp. 1485 (W.D.Mo.1984). The district court ordered substantial and expensive remedies to redress the segrega-

---

8. Defendants also contend that jurisdiction is precluded by federal-state comity, discussed in section IV below.

9. *See also Mandel v. Hutchinson*, 494 F.2d 364, 366 (9th Cir.1974).

tion. However, a limitation on real property- taxes contained in the Missouri Constitution, art. X, § 11(b), (c), prevented the school district from adequately funding those remedies. The district court nevertheless ordered an increase in the school district's property tax levy in order to pay for the desegregation remedies. The United States Supreme Court reversed, holding that the district court had abused its discretion by directly imposing a tax. *Jenkins,* 110 S.Ct. at 1663. However, the Court said that the district court could order the school district to levy property taxes for adequate funding, and could enjoin the operation of Missouri's tax limitation which would have prevented the school district from assessing an adequate tax. *Id.*

Plaintiffs contend that under *Jenkins,* this court has the power to declare that Proposition 13 deprives plaintiffs of their due process and equal protection rights, and to enjoin defendants from applying the state limitation insofar as it impedes adequate funding of their medical entitlements. The holding and some language of *Jenkins* tends to support plaintiffs' position:

> Here the [school district] may be ordered to levy taxes despite the statutory limitations on its authority in order to compel the discharge of an obligation, imposed on [the district] by the Fourteenth Amendment. To hold otherwise would fail to take account of the obligations of local governments, under the Supremacy Clause, to fulfill the requirements that the Constitution imposes on them.... '[S]tate policy must give way when it operates to hinder vindication of federal constitutional guarantees.'

*Jenkins,* 110 S.Ct. at 1666 (quoting *North Carolina State Bd. of Educ. v. Swann,* 402 U.S. 43, 45, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971)); *see also United States v. Yonkers Bd. of Educ.,* 902 F.2d 213, 219 (2nd Cir.1990).

The Supreme Court also noted that the Court of Appeals had "rejected the argument that such an injunction would violate [the Act], as the injunction would require

the collection of additional taxes, not inhibit the collection of taxes." *Jenkins.* 110 S.Ct. at 1659, n. 10, citing *Appling County v. Municipal Elec. Auth.,* 621 F.2d 1301 (5th Cir.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). *See also Rivera v. Patino,* 524 F.Supp 136, 143 (N.D.Cal.1981); *Hargrave v. McKinney,* 413 F.2d 320, 326–27 (5th Cir.1969). However, those cases are at least factually distinguishable here because, unlike the present case, they did not concern a direct challenge to a state's tax limitation which, if sustained, would impact the state and county tax system.

This court concludes that *Jenkins* does not hold that the Act should not apply to the claims of plaintiffs in this case. This court's reasons are the following:

First, the interests being protected in *Jenkins* were well defined rights to an integrated school system, granted by the United States Constitution. Here, plaintiffs' alleged interests are in medical benefits granted by state statutes. Plaintiffs allege that the implementation of Proposition 13 constitutes "invidious intentional economic class discrimination" against the poor of Alameda County by depriving them of *state* health benefits.[10] Their right to health care was allegedly granted to them by California statutes and not by the federal constitution or federal law. There is no fundamental federal right under the United States Constitution to receive welfare benefits. *Schweiker v. Wilson,* 450 U.S. 221, 234–39, 101 S.Ct. 1074, 1082–85, 67 L.Ed.2d 186 (1981). And a law that "results in some disparity in grants of welfare payments" does not violate the Fourteenth Amendment. *Dandridge v. Williams,* 397 U.S. 471, 484, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *reh'g denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970).

Plaintiffs expressly seek to enjoin the way in which California's tax limitation is implemented (first cause of action) and property taxes are assessed (third cause of action) by Alameda County. The Act by its express terms denies subject matter juris-

---

10. Amended Complaint, ¶ 16.

diction over suits that interfere with "the *assessment* ... of any tax under State law."[11] Requests for a declaration that future assessments are unconstitutional are similarly barred. *City of Burbank v. Nevada,* 658 F.2d 708, 709 (9th Cir.1981).

In this case, the state's tax limitation·is the central constitutional issue, not just an impediment to funding a remedy for an otherwise federally protected right.

Second, the principles which the Supreme Court applied in *Jenkins* do not apply here. The Supreme Court relied on three lines of cases. One line held "that federal courts could issue a writ of mandamus to compel local government bodies to levy taxes adequate· to satisfy their debt obligations." *Jenkins,* 110 S.Ct. at 1665; *see e.g., United States v. New Orleans,* 98 U.S. 381, 25 L.Ed. 225 (1878); *City of Galena v. Amy,* 72 U.S. (5 Wall.) 705, 18 L.Ed. 560 (1866). A second group of cases invalidated statutory limits on taxation power that state legislatures passed after local governments had incurred bond obligations, on the ground that such statutes violated the Contracts Clause of the United States Constitution, art. I, § 10, cl. 1. *Jenkins,* 110 S.Ct. at 1666; *see e.g., Von Hoffman v. City of Quincy,* 71 U.S. (4 Wall.) 535, 18 L.Ed. 403 (1867); *Louisiana ex rel. Hubert v. New Orleans,* 215 U.S. 170, 30 S.Ct. 40, 54 L.Ed. 144 (1909). Neither of those lines of cases applies here. The Court analogized an unfunded remedy in *Jenkins* to a debt obligation. The dissent was skeptical of this analogy, (*see Jenkins,* 110 S.Ct. at 1674–75 (Kennedy, J., dissenting)). But even if that remedy were applicable in *Jenkins,* plaintiffs here are not the beneficiaries of an unfunded debt or bond obligation, or of a court-ordered remedy that has not been funded.

The third line of cases the Court relied upon in *Jenkins* were school desegregation cases. The nature of those cases may underlie the Supreme Court's willingness to approve the exercise of federal equity power to enjoin the operation of the state tax limitation at issue in that case. Both the Supreme Court and commentators have noted that school desegregation cases pose unique settings for the application of equitable principles. *E.g. Brown v. Board of Education,* 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); Chayes, *The Role of the Judge in Public Law Litigation,* 89 Harv.L.Rev. 1281 (1976). *Jenkins* relied principally on two desegregation cases, *Griffin v. Prince Edward County School Bd.,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), and *North Carolina State Bd. of Educ. v. Swann,* 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971), which considered the equitable decrees necessary to end racial discrimination. In *Griffin,* in order to avoid a desegregation decree, the county supervisors had closed the public schools and granted tuition and tax credits for children to attend private. schools. The Supreme Court held that "the District Court may, if necessary to prevent further racial discrimination, require the Supervisors to exercise the power that is theirs ... to reopen, operate, and maintain without racial discrimination a public school system...." *Griffin,* 377 U.S. at 233, 84 S.Ct. at 1234. In *Swann,* the court invalidated North Carolina's anti-busing law, N.C.Gen. Stat. § 115–176.1 (Supp.1969), because it prevented implementing desegregation plans required by the Fourteenth Amendment. In this context, the Court stated that "if a state-imposed limitation on a school authority's discretion operates to inhibit or obstruct the operation of a unitary school system or impede the disestablishing of a dual school system, it must fall; state policy must give way when it operates to hinder vindication of federal constitutional guarantees." *Swann,* 402 U.S. at 45, 91 S.Ct. at 1286.

■ Here, the operation of Proposition 13 is unrelated to desegregation or to any right of plaintiffs guaranteed by the Unit-

---

11. Section 1341 (emphasis added). Further, "[The Act] cannot be avoided by an attack on the administration of a tax as opposed to the validity of the tax itself." *Brooks v. Nance,* 801 F.2d at 1239; *see also Czajkowski v. Illinois,* 460 F.Supp. 1265, 1272 (N.D.Ill.1977), *aff'd,* 588 F.2d 839 (7th Cir.1978).

ed States Constitution or federal law. In this case, Proposition 13 operates as purely an economic measure, balancing the supply and the need for tax revenues. It was adopted as an amendment to the California constitution by popular franchise. Due process and equal protection challenges to a state's economic allocations are reviewed by federal courts under a rational relationship test. *City of New Orleans v. Dukes*, 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976); *Ferguson v. Skrupa*, 372 U.S. 726, 732–33, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963). Proposition 13 may, as plaintiffs assert, be ill-advised, but it is not irrational. Its merits or demerits must be addressed to the people, the legislature and the courts of the state. "[T]he Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." *Dandridge v. Williams*, 397 U.S. at 486, 90 S.Ct. at 1162; *see also City of New Orleans v. Dukes*, 427 U.S. at 303–304, 96 S.Ct. at 2516–17.

This court therefore concludes that the application of the Act, and the principles of federal-state comity discussed below, to plaintiffs' claims here are not contrary to *Jenkins*.

### C.

█ The final requirement of the Act is that plaintiffs must have a "plain, speedy and efficient remedy" in state court. 28 U.S.C. § 1341. "A state court remedy is 'plain, speedy, and efficient' ... if it 'provides the taxpayer with a "full hearing and a judicial determination" at which [plaintiffs] may raise any and all constitutional objections to the tax.'" *Hawaiian Telephone v. Dep't of Labor*, 691 F.2d 905, 911 (9th Cir.1982), quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512–15, 101 S.Ct. 1221, 1228–30, 67 L.Ed.2d 464 (1981).

█ California state court remedies meet those requirements. Under Cal.Civ.Proc. Code § 526a,

An action to obtain a judgment, restraining and preventing any illegal expenditure of ... funds ... of a county ... may be maintained against any officer thereof ... by a citizen resident therein....

While the language of the section states "illegal expenditures," the section has been given a broader interpretation by California courts. The primary purpose of the state statute is to enable citizens to challenge governmental action that would otherwise go unchallenged in the courts because of standing requirements. *Blair v. Pitchess*, 5 Cal.3d 258, 96 Cal.Rptr. 42, 486 P.2d 1242 (1971). It has been applied to permit suits alleging that the state tax procedures transgressed the Fourteenth Amendment. *See Regents of Univ. of California v. Superior Court*, 3 Cal.3d 529, 542, 91 Cal. Rptr. 57, 476 P.2d 457 (1970).

In addition to an action under § 526a, plaintiffs may challenge the interpretation or application of specific provisions of Proposition 13 on constitutional grounds. *See e.g. Amador Valley Joint Union High School Dist. v. State Bd. of Equalization*, 22 Cal.3d 208, 149 Cal.Rptr. 239, 583 P.2d 1281 (1978).

California state courts provide a remedy, and plaintiffs may plainly and efficiently pursue their claims there.

### IV.

█ Defendants also ask this court to decline jurisdiction over plaintiffs' claims on principles of comity, in order to avoid federal interference in the fiscal operations of a county government. Principles of comity underlie the Act and the authorities discussed above. Federal courts are barred by principles of comity, even apart from the Act, from considering constitutional challenges to the implementation of state tax systems. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Rosewell v. LaSalle Nat'l Bank*, 503 U.S. at 503, 101 S.Ct. at 1221; *see also Hawaiian Telephone*, 691 F.2d at 910; *Moore v. Trippe*, 743 F.Supp. 201, 210 (S.D.N.Y. 1990).

Plaintiffs assert that comity is not involved when a state tax measure and its administration violate the Fourteenth Amendment. This argument was answered by *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. at 100, 102

S.Ct. at 177, above. Plaintiffs cannot "hale state officials into federal court every time [they] allege[ ] the requisite elements of a [42 U.S.C.] § 1983 claim." *Id.* at 115, 102 S.Ct. at 186. In *McNary,* plaintiffs brought an action to redress the allegedly unconstitutional administration of a state tax system, and requested damages and equitable relief. The Supreme Court noted that the doctrine of equitable restraint carries "peculiar force" in suits challenging the constitutionality of state tax laws, because such suits interfere with the independence of state institutions and their fiscal operations. *Id.* at 108, 102 S.Ct. at 182. By the same reasoning, the Court also concluded that federal courts may not render declaratory judgments: " 'Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation,' " *Id.* 454 U.S. at 111, 102 S.Ct. at 183 (quoting *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)).

Accordingly, the Court held:

[T]axpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal court. Such taxpayers must seek protection of their federal rights by state remedies, provided ... those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court.

*Id.* at 116, 102 S.Ct. at 186 (footnote omitted). The Court stated that there is "no significant difference" between remedies which are "plain, adequate, and complete" under the doctrine of equitable restraint, and those that are "plain, speedy, and efficient" within the meaning of the Act. *Id.* at 116 n. 8, 102 S.Ct. at 186 n. 8. As discussed above, plaintiffs have avenues of relief in the California state courts. These principles of comity compel this court to refrain from exercising jurisdiction over plaintiffs' claims.

Summary judgment is therefore granted in favor of defendants and against plaintiffs on the first and third claims, for lack of federal jurisdiction.

## V.

Plaintiffs' second claim alleges that plaintiffs were deprived by defendants of their right of access to the political process and the free exercise of their voting franchise, in violation of the Fourteenth Amendment. Plaintiffs' argument is that the voter initiative procedure for amending the California constitution, and adding Proposition 13, "qualitatively reapportioned the voting pool eligible to vote upon the issue of capping or not capping the amount of real property taxes collectible by counties by which to fund the poverty entitlements of California's poor." [12] The "voting pool" was allegedly shifted from those eligible to vote for local representatives to a statewide at-large pool of an economically biased majority of nonpoor, thereby diluting plaintiffs' votes and depriving them of their liberty and property interests. *Id.*

■ There is a fundamental defect in making that claim in this case. The claim contains no allegation as to how these Alameda County defendants were responsible for state wide voter initiative procedures.

In addition, the California Supreme Court has held that Proposition 13 was validly adopted as a state constitutional amendment through the voter initiative process. *Amador Valley Joint Union High School Dist. v. State Bd. of Equalization,* 22 Cal.3d 208, 149 Cal.Rptr. 239, 583 P.2d 1281 (1978); *accord Huntington Park Redevelopment v. Martin,* 38 Cal.3d 100, 105, 211 Cal.Rptr. 133, 695 P.2d 220 (1985). In *Marvin F. Poer and Co. v. Counties of Alameda,* 725 F.2d 1234 (9th Cir.1984), the Ninth Circuit also heard a constitutional challenge to Proposition 13. Plaintiffs sought a refund of property taxes, or damages in the amount of taxes paid. The court held that both the Act and principles of comity barred the federal court from considering the complaint. Noting *McNary,* 454 U.S. 100, 102 S.Ct. 177, the court reasoned that the purposes of the Act and comity would be circumvented if federal courts exercised jurisdiction over such actions.

12. Amended Complaint, ¶ 22.

Plaintiffs cite no authority authorizing this federal court to upset the California Supreme Court's approval of the voter initiative process. Nor do they invoke any federal constitutional provision that compels that result. Plaintiffs attempt to distinguish *Amador Valley* on its facts, arguing that it did not involve health care services to welfare recipients. However, this fact distinction is irrelevant to the validity of the voting procedures. The people of California have the power to initiate and adopt constitutional amendments. Cal. Const. art. II, § 8; *In re Lance W.*, 37 Cal.3d 873, 891, 210 Cal.Rptr. 631, 694 P.2d 744 (1985).

Summary judgment must therefore be granted to defendants and against plaintiffs on this second claim.

IT IS SO ORDERED.