**PACIFIC BELL TELEPHONE COMPANY, Plaintiff,**

v.

**CITY OF HAWTHORNE; The City Council of the City of Hawthorne, and Does 1 through 10, Defendants.**

No. CV–01–01862 CBM.

United States District Court, C.D. California, Western Division.

June 1, 2001.

Gleam Olivia Davis, Sandy L. Sakamoto, Pacific Telesis Group Legal Dept., Los Angeles, CA, for Plaintiff.

William M. Marticorena, Jeffrey Thomas Melching, Rutan & Tucker, Costa Mesa, CA, for Defendants.

**ORDER Denying** Defendants' Motion to Dismiss and **Granting** Plaintiff's Request for Judicial Notice

MARSHALL, District Judge.

The matters before the Court, the Honorable Consuelo B. Marshall, United States District Judge presiding, are (1) Plaintiff's Request for Judicial Notice and (2) Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The parties appeared before the Court on May 21, 2001. Upon consideration of the arguments presented, the Court grants Plaintiff's Request for Judicial Notice and denies Defendants' Motion to Dismiss.

## JURISDICTION

This action is before the court pursuant to 47 U.S.C. § 253 and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Pacific Bell Telephone Company filed a Complaint against the City of Hawthorne and the City Council of the City of Hawthorne on February 27, 2001. The Complaint seeks declaratory and injunctive relief under § 253 of the Telecommunications Act of 1996; federal preemption; California Public Utilities Code § 7901; California Government Code §§ 50030, 66001; and the California Constitution. Plaintiff further seeks a peremptory writ of mandate, pursuant to California Code of Civil Procedure § 1085. Plaintiff contends that this Court has jurisdiction over this action pursuant to the Telecommunications Act of 1996 and the Supremacy Clause of the U.S. Constitution.

The gravamen of Plaintiff's Complaint is that the City of Hawthorne adopted ordinances that impose burdensome regulations and fees on telecommunications service providers. The City adopted Ordinance No. 1686 (the "Ordinance") and Resolution 6612 (the "Fee Resolution") on June 26, 2000 and July 24, 2000, respectively. The preamble to the Ordinance states that the Ordinance was enacted "to adopt reasonable regulations relating to the control and management of its public streets and rights-of-way." The Ordinance requires telecommunications service providers, inter alia, to list all telecommunications agreements, to include a "government approval provision" in all future telecommunications agreements, to maintain certain books and records, to permit auditing and inspection of such books by the City and to provide copies of any filings with the Federal Communications Commission. The Fee Resolution imposes various permit, application, inspection, registration, license and franchise fees on telecommunications service providers who utilize the City's streets, rights-of way and other public property.

The City Informed Plaintiff in January 2001 that Plaintiff is required to comply with the Fee Resolution and Ordinance. Complaint ¶ 4. Plaintiff was instructed to complete a questionnaire, which allegedly is "extensive, burdensome and overreaching." Complaint ¶ 4.

Plaintiff's federal claims seek a determination that the City's Ordinance and Fee Resolution violates and are preempted by § 253. Defendants filed a Motion to Dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(6) on April 2, 2001. Plaintiff filed an Opposition and a Request for Judicial Notice on May 7, 2001. Defendants' Reply was filed on May 14, 2001.

## DISCUSSION

### I. Plaintiff's Request for Judicial Notice

■ Plaintiff requests the Court to take judicial notice of the Opposition to Defen-

dants' Motion to Dismiss filed on March 30, 2001 by Qwest Communications in *Qwest Communications Corp. v. City of Berkeley*, Case No. C01–0663 SI (N.D.Cal.). A court may take judicial notice of a fact that is not subject to reasonable dispute. FED.R.EVID. 201. Courts generally take judicial notice of court filings or pleadings. *See, e.g., Mullis v. United States Bankr.Court*, 828 F.2d 1385, 1388 n. 9 (9th Cir.1987).

■ Based on the foregoing, the Court grants Plaintiff's Request for Judicial Notice.

## II. Defendants' Rule 12(b)(6) Motion to Dismiss

The Complaint states that this Court has federal question jurisdiction over this action pursuant to the Supremacy Clause of the U.S. Constitution (hereinafter "Supremacy Clause") and the Telecommunications Act of 1996 (hereinafter "Telecom Act"). Defendants argue that Plaintiff's claims should be dismissed because § 253 of the Telecom Act does not provide for a private right of action. Defendants further argue that Plaintiff's challenge of the Fee Resolution is precluded by principles of federal-state comity and Tax Injunction Act.

### A. Private Right of Action Under Section 253

Plaintiff's first cause of action seeks declaratory and injunctive relief under 47 U.S.C § 253(a) and (c).

Congress enacted the Telecom Act to partially deregulate the telecommunications industry. Section 253 expressly preempts any state law which prohibits or has the effect of prohibiting telecommunication services. 47 U.S.C. § 253(a). Section 253 does not expressly authorize a private right of action fix telecommunication service providers.

■ Whether a statute impliedly provides for a private right of action is a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Courts consider the following factors when determining whether an implied private right of action should be inferred:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the state create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations omitted). These factors are not entitled to equal weight. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 579, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). "The central inquiry remains whether Congress intended to create, either expressly or by implications, a private cause of action." *Id.*

■ The language of § 253 and the legislative history of the Telecom Act support a finding that Congress intended to create a private right of action for telecommunications service providers under section 253(c), but not under sections 253(a) or (b). The Telecom Act partially deregulates the telecommunications industry "to accelerate ... private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to

competition." H.R.Conf.Rep. No. 104–458, at 1 (1996). The Telecom Act requires the interconnection of competitors' poles, ducts and rights-of-way to facilitate widespread customer access to telecommunications services. *See* 47 U.S.C. § 251. As part of this universal service effort, the Act limits states' ability to regulate providers of telecommunications services. *See* 47 U.S.C. § 253; *see also City of Auburn v. Qwest Corp.*, 247 F.3d 966, 980–81 (9th Cir.2001) ("Municipalities ... have a very limited and prescribed role in the regulation of telecommunications.").

Section 253 provides, in relevant part: (a) In general. No state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service. (b) State regulatory authority. Nothing in this section shall affect the ability of a state to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers. (c) State and local government authority. Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from the telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government. (d) Preemption. If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

47 U.S.C. § 253(a)–(d). Section 253(d) instructs the Federal Communications Commission ("FCC") to preempt any state or local legal requirement that violates either subsection (a) or (b). No express authority is given to the FCC to preempt state laws that violate subsection (c). Congress' failure to grant such authority to the FCC implies that Congress intended § 253(c) to be enforced by those entities most directly affected by unreasonable rates—namely, telecommunications service providers.

The legislative history of § 253 further indicates that Congress intended to provide a private right of action under subsection (c), but not subsections (a) and (b). The Senate debate regarding the scope of the preemption under § 253(d) indicates that Congress intended that challenges to state and local laws, pursuant to §§ 253(a), (b), would be heard before the FCC in Washington, DC with a right of appeal to the United States Court of Appeals. Senators Feinstein and Kempthorne expressed concern, during the debate, that the scope of § 253(d)'s preemption was too broad and proposed eliminating section 253(d) altogether. Senator Gorton described the impact of eliminating § 253(d) as follows:

[Elimination of § 253(d)] does not impact the substance of the first three subsections of this section at all, but it does shift the forum in which a question about those three subsections [i.e., §§ 253(a)–(c)] is decided. Instead of being the Federal Communications Commissions with an appeal to a Federal court here in the District of Columbia, those controversies will be denied by the

various district courts of the United States....

141 Cong.Rec. S8206, S8212 (daily ed. Jun. 13, 1995) (statement of Sen. Gorton). Senator Gorton stated that § 253(d) should be amended to balance the competing concerns of centralized rule making and local control of public rights-of-way:

> There ought to be one center place where these questions are appropriately decided by one Federal entity which recognizes the impact of these rules from one part of the country to another and one Federal court of appeals. On the other hand, the localism argument that cities, countries, local communities should control the use of their own streets and should not be required to come to Washington, DC, to defend a permit action for digging up a street, for improving or building a new utility also has great force and effect....

*Id.* at S8212. Senator Gorton proposed the current language of § 253(d) to address these competing concerns. He explained during the debate:

> There is no preemption ... for subsection (c) ... which is the subsection which preserves to local governments control over their public rights-of-way. It accepts the proposition ... that these local powers should be retained locally, that any challenge to them take place in the Federal district court in the locality and that the Federal Communications Commission not be able to preempt such actions.

*Id.* at S8213. Congress intended that disputes arising under §§ 253(a) and (b) would be heard before the FCC and appeals from the FCC's decisions heard by the U.S. Court of Appeals for the District of Columbia.[1] Any complaints by telecommunications service providers that a state or local law violates either § 253(a) or (b) should be lodged with the FCC in Washington, DC. However, complaints that a state or municipal law violates § 253(c) should be filed locally in federal court.

Other courts addressing the issue of whether § 253(c) affords a private right of action have reached conflicting conclusions.[2] In *GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968 (D.Ariz. 1996), the district court concluded that § 253(*o*) did not provide for a private right of action. The court construed §§ 253(d) and 257 as being the sole means of enforcing § 253. *Id.* at 970. This interpretation is problematic since the plain language of § 253(d) does not empower the FCC to preempt laws violating § 253(c). The district court's interpretation of § 253 would render § 253(c) unenforceable.

Defendants argue that courts recognize a presumption against implying private rights of action under the Telecommunications Act. Defendants' reliance on *Maydak v. Bonded Credit Co.,* 96 F.3d 1332 (9th Cir.1996), is misplaced. In *Maydak,* the Ninth Circuit stated that "courts have been unwilling to permit an expansive reading of the statutory language or to create implied causes of action." *Id.* at 1334. *Maydak* is inapplicable to the present case because the Ninth Circuit was interpreting the Telecommunications Act 1934, not the Telecom Act. Congress' en-

---

1. This review procedure is consistent with 28 U.S.C § 2342, which states that "[t]he court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1).

2. *Cf., TCG Detroit v. City of Dearborn,* 206 F.3d 618 (6th Cir.1999) (finding private right of action) and *GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968 (D.Ariz.1996) (finding no private right of action).

actment of the Telecommunications Act of 1996 marks its intent to implement a new regulatory structure for telecommunications service providers, which includes a limited private enforcement scheme.

Based on the foregoing, the Court finds that § 253(c) provides telecommunications service providers with an implied private right of action, but §§ 253(a) and (b) do not.

Plaintiff's first cause of action alleges that the Ordinance and Fee Resolution violate 47 U.S.C. § 253. Plaintiff contends that the Ordinance violates § 253(a) by imposing "numerous burdensome" registration, filing and record keeping requirements on telecommunications service providers and not disclosing the standard for obtaining an exception to the registration process. Complaint ¶¶ 34–38. Plaintiff further alleges that the Ordinance and Fee Resolution violate § 253(c) because:

> The multiple fees imposed by the Ordinance and the [Fee] Resolution including, but not limited to, the License and Franchise fees based upon the fair market value of the property rights granted, the Security deposit, encroachment permit fee, the Registration fee and the Public Works Inspection fee, are duplicative of one another, exceed the actual costs of managing the rights-of-way, are charged for conditions of approval not directly related to the use of the rights-of-way and are generally not fair and reasonable.

Complaint ¶ 40.

Based on the foregoing, the Court find that Plaintiff has standing to sue under 47 U.S.C. § 253(c), but not under § 253(a). The Court's inquiry does not end here. Plaintiff may have limited standing to seek declaratory relief under the Supremacy Clause, as discussed below.

**B. Preemption Under Supremacy Clause**

Plaintiff argues that, even if § 253 does not afford a private right of action, it has standing to sue under the Supremacy Clause of the U.S. Constitution. Defendants concede that Plaintiff may have standing to sue under the Supremacy Clause, but argues that the Complaint does not state that Plaintiff is suing under the Supremacy Clause.

■ The Supremacy Clause "invalidates state laws that interfere with, or are contrary to" federal law. *City of Auburn v. Qwest Corp.*, 247 F.3d 966, 980 (9th Cir. 2001). "Within constitutional limits, Congress is empowered to preempt state laws in several ways, including by expressly stating its intention to do so." *Id.* "[T]he Supremacy Clause is not a substantive constitutional provision that creates rights...." *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848 (9th Cir. 1985) (citing *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 612–15, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979)). The Supreme Court has stated that "even though that Clause is not a source of any federal rights, it does 'secure' federal rights by according them priority whenever they come in conflict with state law." *Chapman*, 441 U.S. at 613, 99 S.Ct. 1905. The Supremacy Clause "define[s] the relationship between state and federal law." *White Mountain*, 810 F.2d at 848. A plaintiff has limited standing to sue under the Supremacy Clause for declaratory relief that a state law is preempted by federal law—even when the federal law does not authorize a private right of action. *AT & T Communications v. City of Austin*, 975 F.Supp. 928, 937 (W.D.Tex.1997); *see also City of Auburn*, 247 F.3d 966, 980–81.

The Complaint states that Plaintiff seeks declaratory relief that the Ordinance and the Fee Resolution are preempted by

the Telecom Act under the Supremacy Clause. Complaint ¶ 35.

■ Based on the foregoing, the Court finds that Plaintiff has standing to seek declaratory relief regarding preemption of the Ordinance and Fee Resolution preempted by §§ 253(a), (c)—even though § 253(a) does not provide for a private right of action.

### C. Federal–State Comity & Tax Injunction Act

Defendant argues that Plaintiff's challenge of the Fee Resolution is precluded by principles of federal-state comity and the Tax Injunction Act.

### 1. Tax Injunction Act

The Tax Injunction Act of 1937 (hereinafter "TIA") states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The TIA codifies "the preexisting federal equity practice of non-interference with states' internal economy and administration" *Berry v. Alameda Board of Supervisors,* 753 F.Supp. 1508, 1511 (N.D.Cal.1990); *accord Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). The TIA "bars anticipatory relief, suits to stop ("enjoin, suspend or restrain") the collection of taxes." *Jefferson County v. Acker,* 527 U.S. 423, 427, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).

Not every assessment by the State constitutes a "tax" for purposes of the TIA. *Hexom v. Oregon Dept. of Transportation,* 177 F.3d 1134, 1135 (9th Cir.1999). "Federal law determines whether an assessment qualifies as a tax...." *Wright v. Riveland,* 219 F.3d 905, 911 (9th Cir.2000). Courts distinguish between taxes and reg-

ulatory fees. *Id.* at 1136. The Ninth Circuit has stated:

> [Courts] have sketched a spectrum with a paradigmatic tax at one end a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

*Id.* (quoting *San Juan Cellular Tel. Co. v. Public Serv. Comm'n,* 967 F.2d 683, 685 (1st Cir.1992)). The Ninth Circuit considers three "primary factors" in determining whether an assessment is a tax:

> (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed.

*Id.* at 1137; *Wright,* 219 F.3d at 911. An assessment is more likely to be a regulatory fee if it is imposed by an administrative agency, is imposed on a narrow class, and is used only for special purposes. *Bidart Brothers v. California Apple Comm'n,* 73 F.3d 925, 931–32 (9th Cir.1996).

The Ordinance authorizes the City Council to impose on telecommunication service providers various fees, including permit, registration, application, license and franchise fees. (Complaint, Ex. A). The Fee Resolution, pursuant to the Ordinance, imposes an Encroachment Permit Application Fee, Public Works Inspection

Fee, Registration Fee, License Application Fee and Franchise Application Fee. The Fee Resolution's Preamble states that such fees do "not exceed the estimated reasonable cost of providing the services for which the fee is charged and [are] not being levied for general revenue purposes." The Fee resolution further imposes Annual License and Annual Franchise Fees, which "are based upon the fair market value of certain franchise or license rights."

The fees are imposed by the City Council—the legislative body for the City of Hawthorne. However, the fees are imposed on a narrow class of citizens—telecommunications service providers. Furthermore, the fees are designed to cover the "estimated reasonable costs" and "all the incidental consequences that may be likely to subject the public to cost." (Preamble to Fee Resolution). The Fee Resolution states that the fee structure is designed to "relieve the general taxpayers from the burden of supplementing the costs by the City for providing ... necessary services" to telecommunication service providers.

■ The Court finds that the Ordinance and Fee Resolution impose regulatory fees rather than a tax. Based on the foregoing, the Court finds that the TIA does not deprive this Court of jurisdiction.

**2. Federal–State Comity**

■ Courts "have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 586, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). Taxation is a primary means for States to operate their governments. *Id.* Courts should interfere with a State's power to tax "as little as possible." *Id.* The principles of federal-

state comity do not preclude Congress from authorizing the courts to interfere with state taxation. *See id.* at 588–89, 115 S.Ct. 2351; *see also Santa Monica Airport Ass'n v. City of Santa Monica,* 659 F.2d 100, 105 (9th Cir.1981) ("The principles of comity and federalism militate against ... invalidating a state or local regulation unless ... on its face, it is preempted.").

■ Congress intended to preempt any local law that has the effect of prohibiting telecommunications services. 47 U.S.C. § 253(a). Principles of comity do not preclude this Court from entertaining Plaintiff's challenge to the Ordinance and Fee Resolution.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Request for Judicial Notice and **DENIES** Defendants' Motion to Dismiss.

**SO ORDERED.**